DRAKE, Plaintiff in error, v. STATE, Defendant in error.

*Nos. State 87, 88. Argued November 26, 1969.—Decided December 19, 1969.*
(Also reported in 172 N. W. 2d 664.)

228

For the plaintiff in error there was a brief and oral argument by *Roy T. Traynor* of Wausau.

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *Robert W. Warren,* attorney general, *William A. Platz,* assistant attorney general, and *Daniel L. La Rocque,* district attorney of Marathon county.

ROBERT W. HANSEN, J.   To prevail here, the defendant must establish that setting aside the judgment and order of the trial court and allowing the defendant to withdraw his guilty plea is ". . . necessary to correct a manifest injustice." [1] Where, as here, the record shows compliance with sec. 957.26 (2), Stats., and an apparent waiver of counsel, the burden of proof is on the defendant to establish that his waiver of counsel was not made voluntarily, knowledgeably and intelligently.[2] The burden to show that the plea of guilty is involuntary likewise rests with the defendant.[3] Such burden has not been met, and on this record it is difficult to see how it could have been. The temptation is strong to affirm without saying more. However, the competent and conscientious thoroughness

---

[1] *State v. Reppin* (1967), 35 Wis. 2d 377, 385, 151 N. W. 2d 9.

[2] *Van Voorhis v. State* (1965), 26 Wis. 2d 217, 223, 131 N. W. 2d 833; *see also Reiff v. State* (1969), 41 Wis. 2d 369, 372, 164 N. W. 2d 249.

[3] *State v. Reppin, supra,* footnote 1.

of the trial court in establishing a factual basis for both waiver of counsel and plea of guilty merits a more extended comment and commendation. It makes, not a good target, but a good model.

*Waiver of counsel.*

As to waiver of counsel, here are the bases touched in the court's interrogation of the defendant, at the initial hearing and at the arraignment.

*Charge*: "There is a complaint that on the first day of December, 1968, in the City of Wausau, you unlawfully, feloniously, with intent to aid prisoners to escape from custody, introduced into the Marathon county jail where said prisoners were detained, hacksaw blades which were useful in making an escape contrary to section 946.44 of the Wisconsin Statutes."

*Counsel*: "*Q.* Do you have a lawyer? *A.* No, sir. *Q.* Do you intend to get one? *A.* No, sir. . . . *Q.* Are you able to hire one? *A.* No, sir."

*Rights*: "*Q.* Do you understand that under the law in Wisconsin you are entitled to be represented by a lawyer and, if you have no money or property to hire a lawyer, the Court could appoint one for you at county expense? *A.* Yes, sir."

*Fees*: "*Q.* . . . You are further advised that, if you are convicted after a plea of guilty or a trial and if you should be placed on probation, the Court could order you to pay the reasonable attorney's fees it might allow if it did appoint an attorney for you. *A.* Yes, sir. *Q.* Do you understand what your rights are in that regard? *A.* Yes, sir."

*Advice*: "*Q.* Did anyone advise you not to ask the Court to appoint a lawyer for you? *A.* No, sir. *Q.* Did anyone make any promises or threats or use any force to get you not to ask the Court to appoint a lawyer for you? *A.* No, sir. . . . *Q.* And you are doing this freely and voluntarily? *A.* Yes, sir."

*Schooling*: "*Q.* How far did you go to school, Mr. Drake? *A.* Second year high school. *Q.* Senior? *A.*

Second year. *Q.* Have you ever been in a mental institution? *A.* No, sir."

*Work*: "*Q.* What was your last work? *A.* Hammer Blow Tool. *Q.* In Wausau here? *A.* Yes, sir. *Q.* How long did you work there? *A.* About four months."

*Penalty*: "*Q.* This charge is a felony for which you could be sentenced to not more than five years in prison or a $500.00 fine or both . . . Do you understand that? *A.* Yes, sir."

*Counsel*: "*Q.* Sometimes an attorney might find circumstances that would provide a defense or other circumstances that might go to mitigate the penalty the Court might otherwise impose. Do you understand your rights in that respect? *A.* Yes, sir. *Q.* Nevertheless you wish to proceed at this time without counsel? *A.* Yes, sir."

*Plea of guilty.*

As to the plea of guilty, at the time of arraignment the trial court asked the following additional questions:

*Threats*: "*Q.* Did anybody make any promises or use any threats or use any force to get you to plead guilty? *A.* No, sir."

*Charge*: (After the reading of the information to the defendant.) "*Q.* Do you understand what you are pleading guilty to? *A.* Yes, sir. *Q.* What? *A.* Taking hacksaw blades into the county jail."

*Jury*: "*Q.* And you understand that by pleading guilty there will not be a jury trial? *A.* Yes, sir. *Q.* In effect you are waiving your rights to a jury trial by pleading guilty? *A.* Yes, sir. *Q.* And are you doing this freely and voluntarily? *A.* Yes, sir."

*Penalty*: "*Q.* And knowing that you could be sentenced to five years in prison or fined $500.00 or both, do you want me to accept your plea of guilty? *A.* Yes, sir."

*Summary*: "*Q.* I think the record should show that the Court, as I indicated this morning, has presided over matters where Mr. Drake has appeared before it as a defendant and I am satisfied that he understands his

rights . . . and on his statement in open court I am going to receive his plea of guilty as being freely and voluntarily made by him at this time, is that right? *A.* Yes, sir."

*Prior appearances.*

Defendant's brief contends that the trial court had a greater duty to "scrutinize" the situation because the judge knew that the defendant, in his earlier skirmishes with the law, had been represented by counsel. The record appears to establish that the defendant had been in court eighteen times from 1947 through 1968, and had been represented by counsel on previous occasions as late as 1968. If this fact of prior involvements with the law is given weight, it leans against the position of the defendant. Familiarity may or may not breed contempt, but familiarity with court procedures strengthens the assurance that the defendant knew his exact situation and the alternatives open to him.

*Terseness of Responses.*

Defendant's brief stresses the fact that ". . . of the 55 answers given by the defendant on December 5, 1968, the defendant answered, 'Yes, sir,' or 'No, sir,' 41 times." Brevity has been termed the soul of wit. Certainly it is not the foe of responsiveness. Where a Yes or No answer is all that is required by the form of the question, that is all that need be given. There is no basis in law or semantics for the idea that terseness erodes either completeness or persuasiveness of a reply. One President of the United States, Calvin Coolidge, walked the route of monosyllabic replies all the way to the White House.

*Duty to Locate?*

Defendant's brief claims that the trial court had an additional duty, left unfulfilled: To locate and determine the reason for the defendant's plea and waiver. Says the brief: "What was needed was a searching analysis by

the trial court of the reasons and circumstances surrounding the defendant's plea and waiver of counsel." The inquiry that the trial court is required to make relates solely to the voluntariness of the plea or waiver, and to their being knowledgeably and intelligently made. The decision as to waiver or plea is for the defendant to make. He is not required to state his reasons, and the court is not required to locate them.

Defendant's brief suggests that the record here ". . . indicates that strong elements of coercion were present." The primary reference appears to be to the fact that ". . . the defendant's wife was a suspect and the defendant was aware of this possibility after his interrogation which was virtually coincidental with his wife's." The defendant, while a prisoner in the county jail, exchanged an old hacksaw blade for a new one that was in the jail garage, took it to the jail in between two boxes of chocolate covered peanuts and gave the peanuts and hacksaw blade to one of the persons who broke out of the jail. (They cut through the bars to escape.) Afterwards the defendant destroyed part of the hacksaw blade used in the escape; a part of it, however, was found on his person. It is likely that the defendant had to have the assistance of an outside-the-jail confederate in this sequence of events. It is obvious that the defendant volunteered no information as to who helped him in facilitating the jailbreak. It is not unusual that participants in criminal enterprises elect not to name their coconspirators. In the organized underworld, such refusal to involve others underlies the gangland penalty of Omerta, or Death to the Informer. To recognize this attitude is not to applaud or encourage it. However, such refusal to involve others, even those equally guilty, cannot be described as coercive in any sense of that word. If it is, it is a self-imposed "coercive element," which does not weaken the voluntary and knowledgeable aspect of an act based upon it.

*Conclusion.*

It is not necessary here to deal with the route by which suggested guidelines [4] became mandated requirements [5] as to trial court procedures in accepting waivers of counsel or pleas of guilty. In the first place such requirements were made prospective only, applying in this state only to guilty pleas accepted after June 2, 1969.[6] (The plea of guilty here was accepted on December 5, 1968.) In the second place, the proceedings here met such test and indeed go beyond the minimum requirements insisted upon. So it is enough here to conclude that the trial court did all in its power, and all that is required, to make certain that both the waiver of counsel and the plea of guilty were voluntary acts of the defendant, intelligently made. On the factual basis here established, both were properly accepted by the trial court.

*By the Court.*—Judgment and order affirmed.

[4] *State ex rel. Burnett v. Burke* (1964), 22 Wis. 2d 486, 494, 126 N. W. 2d 91.

[5] *Boykin v. Alabama* (1969), 395 U. S. 238, 89 Sup. Ct. 1709, 23 L. Ed. 2d 274, making applicable to state court proceedings the case of *McCarthy v. United States* (1969), 394 U. S. 459, 89 Sup. Ct. 1166, 22 L. Ed. 2d 418.

[6] *Ernst v. State* (1969), 43 Wis. 2d 661, 170 N. W. 2d 713.