STATE, Respondent, v. WOLFE, Appellant.

*No. State 133. Argued March 5, 1970.—Decided March 31, 1970.*
(Also reported in 175 N. W. 2d 216.)

480

483

For the appellant there were briefs by *Arneson, Berg & Doyle* and *Patrick R. Doyle,* all of La Crosse, and oral argument by *Patrick R. Doyle.*

For the respondent the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *Robert W. Warren,* attorney general, and *Donald L. Goodman,* district attorney of Monroe county.

WILKIE, J. Two issues are presented by this appeal:

1. Did the defendant establish that his motion for leave to withdraw his guilty plea should have been granted to correct a manifest injustice?

2. Did the trial court adequately interrogate the defendant at the time of the acceptance of the defendant's guilty plea?

*Manifest injustice.*

In *State v. Reppin,*[1] this court adopted the "manifest injustice" test which provided that a defendant would be permitted to withdraw his plea of guilty if he could prove by clear and convincing evidence that his plea was made under any of the following nonexhaustive situations:

"(1) [H]e was denied the effective assistance of counsel guaranteed to him by constitution, statute, or rule;

"(2) the plea was not entered or ratified by the defendant or a person authorized to so act in his behalf;

"(3) the plea was involuntary, or was entered without knowledge of the charge or that the sentence actually imposed could be imposed; or

"(4) he did not receive the charge or sentence concessions contemplated by the plea agreement and the prosecuting attorney failed to seek or not to oppose these concessions as promised in the plea agreement."[2]

---

[1] (1967), 35 Wis. 2d 377, 151 N. W. 2d 9.

[2] *Id.* at page 385, note 2, and page 386.

Situations (3) and (4) are the critical ones in issue on this appeal.

Defendant argues that he should be permitted to withdraw his plea because under (4) "he did not receive the charge or sentence concessions contemplated by the plea agreement." He further argues even if there was no plea bargain that was violated, his trial attorney misinformed him of what the plea bargain would be and that therefore under situation (3) his plea was "entered without knowledge . . . that the sentence actually imposed could be imposed." Finally, defendant also contends that the plea was involuntary under (3) because the trial judge participated in the plea bargain.

### Violation of the plea agreement.

Our first inquiry must be directed to whether the alleged plea bargain was violated. What then was the alleged plea bargain?

This court has said:

". . . If it is going to be permissible to withdraw a guilty plea because a plea agreement was violated, the first element which the accused should have to prove is that a plea agreement was actually made." [3]

It is apparent that some sort of agreement was made between the district attorney and the defense counsel before pleading since the original three charges were reduced to only one. This could likely have been a charging concession agreement. It was not violated and there is now no allegation that it was.

Assuming there was also an agreement on sentencing, was it violated? As defendant understood the agreement, he was to receive a jail sentence unless the presentence report recommended otherwise. The report contained no recommendation either way. The trial court sentenced

---

[3] *LeFebre v. State* (1968), 40 Wis. 2d 666, 672, 162 N. W. 2d 544.

him to two years. He cannot assert any violation of any sentencing agreement since, according to his own understanding, there was no violation.

*Trial attorney's report to defendant of plea agreement.*

At this point defendant contends that his trial attorney reported incorrectly to him on the nature of the plea bargain and that this mistaken understanding led the defendant to plead guilty.[4] Attorney Arneson claims he told the defendant that a jail sentence would not be imposed unless there was a recommendation in the presentence investigation. The defendant testified that it was his understanding if the presentence investigation recommended that he not go to jail, he wouldn't. A shorthand way to phrase these understandings would be:

Arneson: No jail unless otherwise recommended.
Defendant: Jail unless otherwise recommended.

Thus, from the defendant's viewpoint, he knew that unless the presentence report contained an affirmative recommendation that he not go to jail, a jail sentence would be imposed. The presentence report here contained no recommendation either way. According to defendant's understanding of the alleged agreement then, he knew he would receive a jail sentence. Thus, there was no violation.

Under this interpretation of the alleged agreement, the attorney general is correct in contending that the defense attorney's mistaken understanding is immaterial. We are concerned with preventing a manifest injustice to the defendant, not to his attorney. There was no manifest injustice here because from the defendant's testimony he knew what the alleged agreement was and there was no violation of it.

---

[4] *See United States v. Mancusi* (D. C. N. Y. 1967), 275 Fed. Supp. 508, 517. *See also State v. Rose* (Mo. 1969), 440 S. W. 2d 441; *People v. Washington* (1967), 38 Ill. 2d 446, 232 N. E. 2d 738.

*Trial judge's participation in plea bargaining.*

Defendant was not personally present at the pretrial (preplea entering) conference held in the trial judge's chambers. The conference was attended by his trial attorney, the district attorney and the trial judge. Defendant now contends that the trial judge participated in the plea bargaining by agreeing during that conference to rely on the recommendation of the presentence report in sentencing defendant.

Unfortunately, no record was made or kept of that conference. Such record has been recommended.[5] We do so again. If such a record were kept no question could arise as to what took place. Judge RICE emphatically denies ever making an agreement that he would rely on the presentence report recommendation. He states that the only statement made regarding the sentence was that the defendant would be given the benefit of a presentence investigation.

In any event, under defendant's version of what transpired, no plea bargain was violated. Furthermore, defendant cannot now object to Judge RICE's hearing the motion to withdraw defendant's guilty plea on the ground that Judge RICE's personal participation in the plea bargain was being questioned. This follows from the fact that defendant did not object to Judge RICE hearing that motion.

While we are satisfied that in this case there was no violation of a plea bargain, we are also satisfied that the trial judge here did not participate in plea bargaining. A trial judge should not participate in plea bargaining.[6]

[5] *See State v. Harrell* (1968), 40 Wis. 2d 187, 194, 195, 161 N. W. 2d 223.

[6] American Bar Association Project on Minimum Standards for Criminal Justice—Pleas of Guilty (Approved Draft, 1968), p. 71, sec. 3.3. *See also Myartt v. State* (1964), 25 Wis. 2d 634, 131 N. W. 2d 371, certiorari denied, 382 U. S. 855, 86 Sup. Ct. 107, 15 L. Ed. 2d 93.

This is true because (1) the defendant can receive the impression from the trial judge's participation in the plea discussions that he would not receive a fair trial if he went to trial before the same judge; (2) if the judge takes part in the preplea discussions, he may destroy his objectivity when it comes to determining the voluntariness of the plea when it is offered; (3) judicial participation to the extent of promising a certain sentence is inconsistent with the theory behind the use of the presentence investigation report, and (4) the defendant may feel that the risk of not going along with the disposition which is apparently desired by the judge is so great that he will be induced to plead guilty even if innocent.[7]

The vice of judicial participation in the plea bargaining is that it destroys the voluntariness of the plea.

It has been said:

"The unequal positions of the judge and the accused, one with the power to commit to prison and the other deeply concerned to avoid prison, at once raise a question of fundamental fairness. When a judge becomes a participant in plea bargaining he brings to bear the full force and majesty of his office. His awesome power to impose a substantially longer or even maximum sentence in excess of that proposed is present whether referred to or not. A defendant needs no reminder that if he rejects the proposal, stands upon his right to trial and is convicted, he faces a significantly longer sentence." [8]

The ABA standards, it should be noted, only preclude a judge's participation in the plea bargaining process *before* a plea bargain or agreement has been reached. These standards indicate that the judge may be informed of the

[7] American Bar Association Project, *supra*, footnote 6, at pages 72, 73, sec. 3.3 (a), *Commentary. See also Commonwealth v. Evans* (1969), 434 Pa. 52, 252 Atl. 2d 689.

[8] *United States v. Gilligan* (D. C. N. Y. 1966), 256 Fed. Supp. 244, 254. For a thorough treatment of this subject, *see Scott v. United States* (D. C. Cir. 1969), 419 Fed. 2d 264.

final bargain once it has been reached and before the guilty plea is formally offered:

"3.3 **Responsibilities of the trial judge.**
"(a) The trial judge should not participate in plea discussions.
"(b) If a tentative plea agreement has been reached which contemplates entry of a plea of guilty or nolo contendere in the expectation that other charges before that court will be dismissed or that sentence concessions will be granted, upon request of the parties the trial judge may permit the disclosure to him of the tentative agreement and the reasons therefor in advance of the time for tender of the plea. He may then indicate to the prosecuting attorney and defense counsel whether he will concur in the proposed disposition if the information in the presentence report is consistent with the representations made to him. . . ." [9]

This limited action by the trial judge is allowed on the theory that a greater degree of certainty that the bargain will be accepted is necessary for the operation of the system.

*Adequacy of trial court's plea-taking record.*

As a basis for establishing an abuse of discretion on the part of the trial court in denying defendant's motion to withdraw his guilty plea, defendant argues that the record made for the acceptance of the guilty plea was insufficient because the trial judge did not follow the mandates of *Boykin v. Alabama*,[10] as interpreted by this court in *Ernst v. State*.[11]

Since the defendant raises this objection for the first time on this appeal we are not obliged to consider this

[9] American Bar Association Project, *supra*, footnote 6, at pages 11, 12, sec. 3.3.
[10] (1969), 395 U. S. 238, 89 Sup. Ct. 1709, 23 L. Ed. 2d 274.
[11] (1969), 43 Wis. 2d 661, 170 N. W. 2d 713.

ground.[12] This is particularly true in the instant case for the reason that the defendant filed his motion in the trial court on October 22, 1969, and his unraised argument is based upon *Boykin,* which was decided on June 2, 1969, and applied to all pleas taken subsequent to that date.

From the record it is clear that the trial court was aware of the United States Supreme Court decisions (presumably *Boykin* and *McCarthy*) [13] requiring the trial court to make a record of its own to satisfy itself that the plea is made voluntarily and understandingly. It apparently took the plea with these requirements in mind. For that reason we consider defendant's objection, although he has no right to raise it here. It is obvious that since this plea was taken subsequent to June 2, 1969, *Boykin* did apply.[14] Important to this case is the fact that this court has very recently [15] considered *Boykin* as having made *McCarthy* binding upon the states as a matter of due process under the federal constitution. The significance of *McCarthy* was explained in *Ernst.*

"In *McCarthy* the court held that Rule 11 is not complied with unless the judge personally questions the defendant and exposes the defendant's state of mind on the record. The record of the judge's interrogation must reveal that the plea was voluntary and that the defendant understood both the charge and its consequences.

". . . the record must also indicate 'that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty.' . . ." [16]

---

[12] *Curry v. State* (1967), 36 Wis. 2d 225, 236, 152 N. W. 2d 906.

[13] *McCarthy v. United States* (1969), 394 U. S. 459, 89 Sup. Ct. 1166, 22 L. Ed. 2d 418.

[14] See *Ernst v. State, supra,* footnote 11; *Drake v. State* (1969), 45 Wis. 2d 226, 234, 172 N. W. 2d 664.

[15] *Ernst v. State, supra,* footnote 11; *Cross v. State* (1970), 45 Wis. 2d 593, 173 N. W. 2d 589.

[16] *Ernst v. State, supra,* footnote 11, at pages 672, 673.

In the instant case the trial court did, prior to the acceptance of the plea, personally address the defendant many times. The defendant indicated that the plea was a voluntary move on his part. The defendant also in response to the judge's questioning, expressed understanding of the consequences of his plea both in terms of the punishment to which he could be subjected and in terms of the waiver of such constitutional rights as trial by jury and the right to require the state to prove his guilt beyond a reasonable doubt.

In *McCarthy* the court stated that the plea taking "cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." [17] But *McCarthy* makes it clear that the record made by the trial court will be adequate if the facts of the crime as related to the applicable law are brought out in the record and this need not be by specific questions and answers addressed by the court to the defendant, but, as here, may be supplied by questions and answers directed at other witnesses such as the policeman. We are satisfied that the record presented here does reveal that the defendant understood the charge and that the requirements of *Boykin*, *McCarthy*, and, indeed, Federal Rule 11 were all met.

*By the Court.*—Order affirmed.

---

[17] *McCarthy, supra,* footnote 13, at page 466.