FARRAR, Plaintiff in error, v. STATE, Defendant in error.

*No. State 45. Argued October 8, 1971.—Decided November 5, 1971.*
(Also reported in 191 N. W. 2d 214.)

For the plaintiff in error there was a brief by *George A. Richards* and *Tinkham, Smith, Bliss & Patterson,* all of Wausau, and oral argument by *Mr. Richards.*

For the defendant in error the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the brief were *Robert W. Warren,* attorney general, and *William A. Platz,* assistant attorney general.

ROBERT W. HANSEN, J. Doubts accumulate as to whether what is termed a "plea bargain" has a proper place or function in the administration of criminal justice.

Traditionally, it was no more than an offer by defendant to enter a plea of guilty if the charge brought was dropped to a lesser offense.

Such exchange of a guilty plea for a lowered charge, carrying less extreme penalties, was termed in court and corridor "copping a plea."

By pleading guilty to the lesser charge, the defendant avoided the risk of exposure to the more severe penalty that was prescribed for the offense with which he was initially charged.[1]

---

[1] *See: North Carolina v. Alford* (1970), 400 U. S. 25, 91 Sup. Ct. 160, 27 L. Ed. 2d 162, denying the right to withdraw a plea of guilty to second-degree murder where the defendant subsequently claimed his only reason for agreeing to so plead was to escape

By consenting to reduce the charge to a lesser offense, the prosecutor presumably gained an acceleration of the proceedings, avoiding the rigors of a contested trial and the risk of not meeting the higher degree of proof required for conviction on the greater offense.

However, defendants are understandably more concerned with what will happen to them upon conviction than with what could or might happen. The assurance of their not going to prison at all is more precious than the nature of the charge or length of sentence. This is particularly so because time of actual incarceration is determined more by parole authorities than by courtroom sentences. So defense counsel were prodded by defendants to prearrange the exact outcome of the pending case.

Since the imposition of sentence is entirely a responsibility of the trial judge, such metastasizing of the "plea bargain" required involving the judge in the negotiations. The pressure resulted in the suggestion that a defendant's not receiving the "sentence concessions contemplated by the plea agreement" should be grounds for a withdrawal of a guilty plea.[2]

However, this state has rejected the suggestion that "plea bargaining" can invade or affect the sentencing process, and has ". . . made it clear that trial courts are not to participate in plea bargains, . . ."[3] stating:

". . . In this state there is to be no courtroom counterpart of the fixed prizefight in which the participants waltz through a prearranged script to a predetermined outcome. . . . plea bargains between prosecution and

the death penalty that could have followed a conviction on a charge of first-degree murder.

[2] American Bar Association Project on *Minimum Standards for Criminal Justice—Pleas of Guilty* (Approved Draft, March, 1968), Part II, pages 9, 10.

[3] *Young v. State* (1971), 49 Wis. 2d 361, 367, 182 N. W. 2d 262, citing *State v. Wolfe* (1970), 46 Wis. 2d 478, 175 N. W. 2d 216.

defense cannot reach nor invade the matter of sentencing which is entirely for the judge to determine." [4]

Such insulation of the integrity of the sentencing process goes beyond precluding the participation of the trial judge in what is being given and what is being gotten in discussions between prosecution and defense. It is intended to protect the integrity of the entire sentencing process. It includes sharply limiting the right of even the prosecutor to bind himself in advance to recommend a disposition of a case which he does not or no longer believes to be proper and appropriate.[5] As this court has said:

". . . A district attorney has the responsibility to the community and to the court to recommend to the court a disposition of the case that he believes to be fair and reasonable. He may not bind himself to utter words that, on facts and information not present at the time of the plea understanding, he does not mean or believe. . . . Substituting a bargained statement for a present recommendation is, if concealed, a fraud upon the court and, if revealed, without persuasiveness or significance." [6]

With the sentence to be imposed, and the sentencing process, kept severely removed from any pretrial bargaining, it follows that the conducting of a presentence investigation and the recommendations of the court-appointed person conducting such investigation and evaluation are to be insulated against "bargains" or predetermined conclusions. As was said in *Young*:

". . . When a recommendation as to sentence is requested by the court, that court is entitled to an evaluation of all the factors and a recommendation based on all of the facts then in the record. . . ." [7]

---

[4] *Id.* at page 367.

[5] *Id.* at page 369.

[6] *Id.* at pages 369, 370.

[7] *Id.* at page 369.

Such entitlement is a right of the community as well as of the court, and applies at least as much to the conducting of a presentence investigation as to a recommendation as to sentence on the part of the prosecutor.

In Wisconsin, the entire sentencing process is to be a search for the truth and an evaluation of alternatives. Any advance understanding between prosecutor and defendant must not involve the trial judge—or any persons conducting a presentence investigation for such trial judge or court.

All this is prologue, but necessary prologue. For, in the case before us, the defendant claims that a state parole agent was a party to a "plea bargain" and failed to keep his part of the bargain. It should be obvious from the foregoing that a parole or probation officer cannot be a party to a "plea bargain." The Wisconsin cases dealing with bargained pleas assume that the bargainers are the district attorney, the defendant and the defendant's attorney, and no one else. That assumption is a requirement. To say that a judge may not be a party to a plea agreement is not to say that parole officers or others may. The limits include who may participate as well as the scope of their negotiations. If instead of a parole agent, the claim was that a probation officer, deputy sheriff, chief of police, arresting officer, or a principal witness was present at the negotiations and a party to the agreement, the conclusion would be the same. It does not follow that, wherever a parole officer or law officer or witness in the case was present at a plea negotiation and made certain statements, that such person became in any way a "party" to the agreement. Nor does it follow that a defendant may base a demand for withdrawal of guilty plea on the presence or participation of such other persons. The presence of well-wishers at a marriage ceremony does not make them parties to the marriage contract, nor can what they have to say at the occasion affect the validity of the pledges ex-

changed by bride and groom. While what a parole agent or police officer or witness may have said is not grounds for invalidating an agreement between prosecutor and defense lawyer, that holding does not determine this case for two reasons:

(1) The finding of the trial court that the parole officer did not participate in the plea agreement was not against the great weight of the evidence; and

(2) The finding of the trial court that, by a deliberate choice of trial tactics, the defendant waived the right to challenge the presentence investigation report is supported by the record.

At the hearing on postconviction remedies, the question of whether or not the parole officer had participated in plea negotiations was in dispute. The issue clearly was one of credibility. The parole officer denied he had stated that the district attorney should recommend one year in return for a plea of guilty, and denied that he had in any manner indicated that he would, if asked, make such recommendation. His testimony was: "I was not a party to a plea bargain because our department will not go along with plea bargains." The district attorney, in a counteraffidavit to one submitted by defense counsel, stated that the parole officer ". . . made no promises in the presence of the affiant to make any particular recommendation. . . ." The trial court was not required to accept the testimony of the prosecutor and defense attorney, nor to reject the testimony of the parole officer, where there was a conflict or differing recollection. Where the issue is one of credibility, that issue is for the trier of fact to determine, and it was so here.

Actually, the physical facts or situation at the time of plea discussions support the finding made by the trial court. At that time there was no assurance that a presentence investigation would be had. There was no assurance that this particular parole agent would be named

to conduct any such presentence investigation. There was no way of knowing that he would, in fact, be called upon by the trial court to make any statement or recommendation as to sentence to the trial court. When he was invited, by consent of both district attorney and defense counsel, to be present at any discussions they were to have, it was solely in relation to parole status, not to the sentence to be imposed. Obviously, if the prosecutor and defense had agreed on a softer disposition such as probation or suspended sentence, action by the state welfare department to revoke parole would have made the nonincarceration bargain unmeaningful. It was to ascertain the likely limits within which they might bargain, rather than to broaden the number of bargainers, with which they can be assumed to have been concerned. Even if it had been found that the parole officer stated the department likely would not revoke parole if the defendant went to jail for at least one year, the reference would be to parole status, not to the sentence to be imposed by the trial court. The minimum, not maximum, period of incarceration with which the parole department would likely be satisfied would be all that a parole agent could be expected to estimate. In such context, even for a parole officer to say that he would not object to a district attorney recommending a one-year sentence, falls short of indicating the parole officer would recommend that as the appropriate sentence. Neither the district attorney nor defendant's attorney, nor both of them, make a parole agent a party to a plea bargain in a pending case by discussing with him parole status and situations in which parole likely might be continued or revoked. In this case, revocation of parole would have returned the defendant to a youth correctional institution until he was twenty-one years of age, a longer period of time than either the one-year sentence which the district attorney recommended, or the two-year sentence which the court imposed. The desire to clarify parole status is understand-

able, but discussion of it by a parole agent is not joining the bargaining table as a participant in "plea bargaining" in a pending case. While not relied upon by the trial court, the physical facts or actual situation strengthens the finding of fact it made as to nonparticipation of the parole agent in the actual plea bargaining.

Additionally, the trial court found that the defendant, by a deliberate choice of trial tactics, had persisted in his guilty plea despite knowledge of the recommended two-year sentence, and thereby waived his right to challenge the presentence report as contrary to a bargained plea agreement with the person who prepared it. While not needed here for affirmance, this finding appears supported by the sequence of events in this case. The situation is not so much waiver of claimed error (here an error alleged to have occurred subsequent to the entry of plea, rather than before),[8] rather it is an abandonment of right to object by persisting in a plea strategy after the basis for the claim of error is known to defendant. This court has said:

"An accused cannot follow one course of strategy at the time of trial and if that turns out to be unsatisfactory complain he should be discharged or have a new trial. . . ." *Cross v. State* (1970), 45 Wis. 2d 593, 605, 173 N. W. 2d 589.

Here the defendant was fully aware of the contents of the presentence report four or five days before the time of sentencing. He knew it contained a recommendation for a two-year sentence. He had been informed that the trial court did not consider the recommendation of the district attorney, made pursuant to the plea bargain, to be at all binding on him. He had the opportunity to make the same objection before sentencing as he made after sentencing. He had a choice, and he chose not to object.

---

[8] *See: Brisk v. State* (1969), 44 Wis. 2d 584, 588, 172 N. W. 2d 199.

As was said in another case,[9] he had two alternative courses he could have pursued:

> ". . . One was to move to withdraw or change the plea of guilty . . . The other was to utilize the existing guilty plea and urge it as a reason for leniency. Counsel chose the latter and we conclude this was an effective waiver of the right to now raise the objections here made that defendant did not intelligently . . . and understandingly enter his plea of guilty." [10]

Defendant's counsel, in his brief and oral argument, concedes that exactly such choice of alternative routes was made, but states that requiring a choice of roads to follow puts defense counsel in ". . . an untenable position—if he objects his plea strategy is lost and if he doesn't object, there is a greater risk than anticipated the plea agreement will not be followed. . . ." Often enough, in life it is not easy to decide which of two roads should be followed. But seldom, if ever, is it possible to follow both, at least not at the same time. And that is what defendant here seeks to do. He chose not to raise any issue or claim of error as to the two-year sentence recommended in the presentence report. He elected to have that report and recommendation considered by the court without interposing any objection on any basis to it. After sentence was imposed, he asked that he be permitted to go back and take the other road of challenging the report and the right of the person making it to recommend a two-year sentence. This would give him the best of two worlds. Finding the road he chose steeper than he hoped it might be, he wants to retrace his steps and walk down the road he earlier chose not to traverse. While the question on a motion to withdraw a plea is not

---

[9] *State v. Strickland* (1965), 27 Wis. 2d 623, 135 N. W. 2d 295. *See also: Young v. State, supra,* at pages 370, 371; *Griffin v. State* (1969), 43 Wis. 2d 385, 391, 168 N. W. 2d 571.

[10] *State v. Strickland, supra,* at page 630.

whether the accused has waived his rights, but whether he should be relieved of such waiver,[11] there is no sound reason for so doing where a defendant, as a matter of trial tactics and strategy, elects to forego objection and chooses to proceed down an alternative road leading in a different direction. He chose which road he would walk down and is not to be returned to the fork or crossing so he can try the other one.

On the final point raised, as to fairness of sentence, it is enough to state that on a conviction for burglary, with the defendant having a long record of difficulties with the law and society, having been on probation and making a poor adjustment while under supervision, the sentence of two years appears reasonable. The maximum penalty prescribed by statute is ten years.

*By the Court.*—Judgment, sentence and order affirmed.


HALLOWS, C. J. and WILKIE, J. (*jointly concurring*). Inasmuch as the trial court specifically found that the parole agent did not participate in the plea bargain and, in any event, the defendant waived his right to object to the sentence recommendation, we agree in the affirmance of the conviction. The difficulty revealed by this case is that a complete record of the understanding of a defendant as he makes his plea of guilty and the full extent of the plea bargain are not pursued by the trial court at the time of the plea, consistent with our holding of seven years ago in *State ex rel. Burnett v. Burke* [1] indicating that when a criminal defendant pleads guilty the trial court must "ascertain whether any promises or threats have been made to him in connection with . . ."[2] his refusal of counsel, and his proposed plea of guilty." Because of this requirement, the standard of procedure

---

[11] *Brisk v. State, supra,* at page 588.

[1] (1964), 22 Wis. 2d 486, 494, 126 N. W. 2d 91.

[2] *Burkhalter v. State,* ante, page 413, 190 N. W. 2d 502.

is for the defendant to indicate that no promises have been made even in cases in which the plea is the result of some promise by the prosecutor (usually as to sentence or as to dropping of another charge). Many of the criminal appeals reaching this court involve guilty pleas and the unsuccessful effort of a defendant to withdraw that plea after his conviction. In these appeals the defendant often argues that his plea was induced by some unfulfilled promises of the district attorney. In such cases the record at the time of taking the plea is usually of little help in resolving the question because the tacit agreement is that the anticipated bargain be kept sub rosa. Plea bargaining should move into the open. It is an acceptable practice providing no improper threats or promises have been made to induce a plea. For a defendant to deny the plea bargaining when everyone knows that an agreement has been reached to bring about the plea adds only confusion to the already complicated procedure surrounding the acceptance of guilty pleas.

Prior to accepting any guilty plea the trial court must ascertain from the defendant his notion of any promise, agreement, bargain, or recommendation which induced him to plead guilty. The defendant should be required to state in his own words just what he understands the bargain to be. This should be done on the record prior to the acceptance of the plea. In the event the defendant misstates the bargain, his attorney and the district attorney should state their understanding. In situations in which the bargain appears to be improper or to exceed the powers of the district attorney, the court should carefully explain the situation to the defendant. All parties should make certain that the exact understanding appears in the record. In this way the court can ascertain exactly what induced the defendant to enter the plea and determine whether the inducements were accurate and proper. In this way, too, the defendant would be precluded from

later asserting that additional promises were made to induce the plea. The trial court would then have the entire picture before it when the plea is made, and this court would have a more intelligent basis for reviewing the conviction.

This procedure goes beyond the Minimum Standards for Criminal Justice Relating to Pleas of Guilty, sec. 3.3,[3] in that the trial court would be required to inquire into the details of the bargain whereas under the standard the trial court's inquiry is permissive, not mandatory. The experience of this court in reviewing guilty-plea proceedings indicates that the disclosure of the details of the plea bargain should be mandatory.

We would also add to the four grounds designated as manifest injustice warranting withdrawals of a guilty plea, as approved by *Reppin*,[4] the fifth ground added by sec. 2.1 (a) (ii) (5) of the Supplement to the Minimum Standards,[5] approved after *Reppin*, which provides as follows:

"(5) he did not receive the charge or sentence concessions contemplated by the plea agreement concurred in by the court, and he did not affirm his plea after being advised that the court no longer concurred and being called upon to either affirm or withdraw his plea."

---

[3] American Bar Association Project on *Minimum Standards for Criminal Justice—Pleas of Guilty* (Approved Draft, 1968), Part III, pp. 71, 72.

[4] *State v. Reppin* (1967), 35 Wis. 2d 377, 151 N. W. 2d 9.

[5] *Supra*, footnote 2 (Supplement, March, 1968), at page 4.