STATE EX REL. WHITE, Petitioner, v. GRAY, Warden, Respondent.

*No. State 140. Argued November 29, 1972.—Decided January 30, 1973.*

(Also reported in 203 N. W. 2d 638.)

18

20

For the petitioner there were briefs by *James H. McDermott*, state public defender, and oral argument by *Ronald L. Brandt*, assistant state public defender.

For the respondent the cause was argued by *William A. Platz*, assistant attorney general, with whom on the brief was *Robert W. Warren*, attorney general.

WILKIE, J.    We are confronted here with three issues concerning petitioner's efforts to withdraw his guilty plea:

1. Was the guilty plea entered voluntarily in the face of the fact that there had been a plea bargain in which one brother, Raymond, agreed to plead guilty while the state agreed to dismiss the burglary charges against the younger brother, Joseph?

2. Is such a plea bargain against public policy?

3. Was Raymond White denied the effective assistance of trial counsel guaranteed by the sixth amendment?

Plea bargaining is an accepted and necessary part of the process whereby a good many criminal prosecutions are terminated as a result of a guilty plea.[1] The fears, arising from earlier United States Supreme Court cases

[1] *Brady v. United States* (1970), 397 U. S. 742, 90 Sup. Ct. 1463, 25 L. Ed. 2d 747.

wherein it was suggested that pleas which were exchanged for promises were not voluntary,[2] are no longer founded.

The plea bargaining process must be opened to judicial scrutiny. It is essential that a record of the nature of the bargain should be made. This will assist appellate review when a convicted defendant has unsuccessfully attempted to withdraw a guilty plea as made because an alleged plea bargain was not kept. In examining the record here, both at the time the guilty plea was taken and at the hearing to withdraw that plea, this court is considerably handicapped by the fact that no record was made at the time of the plea as to the actual plea bargain, if any, which was agreed upon. Although the petitioner, when asked by the trial court at the time of his plea of guilty, answered "No" to the court's question "Has anyone made any promise to you, Mr. White?" it is clear from the August 2, 1971, hearing that, prior to the guilty plea, there may have been a plea bargain entered into between the prosecution and Raymond White. The nature of that plea bargain is now before us. We are satisfied that the fair, just, and effective administration of criminal justice will be advanced by thoroughly identifying, at the plea taking, any plea bargains which may have been entered into prior to the procedure at which the guilty plea is taken. The matter of making a record of a plea bargain was considered by this court in *Austin v. State*,[3] wherein we stated that a bargain "should always be made a matter of record" when such bargain contemplates the nonprosecution of uncharged offenses. Noting that such

---

[2] *E. g.*, *Machibroda v. United States* (1962), 368 U. S. 487, 82 Sup. Ct. 510, 7 L. Ed. 2d 473.

[3] (1971), 49 Wis. 2d 727, 183 N. W. 2d 56. *See also: State v. Wolfe* (1970), 46 Wis. 2d 478, 487, 175 N. W. 2d 216, concerning the lack of a record of a plea agreement.

a procedure accords with the American Bar Association *Standards Relating to Pleas of Guilty,* the court further stated:

". . . A plea agreement should always be made a matter of record whether it involves a recommendation of sentencing, a reduced charge, a *nolle prosequi* of charges or read ins with an agreement of immunity." [4]

While *Austin* was announced on February 5, 1971, we note that at the time of the guilty plea hearing, March 24, 1971, *Austin* had just barely been published in the advance sheets.

Scholars have long been dissatisfied with the too often hiding of the plea bargain process. The situation is aptly described by Newman:

". . . In a general way trial court judges are aware that prosecutors commonly promise to 'recommend' probation or some other sentence leniency if the defendant pleads guilty, but the court has no way of knowing, in any specific instance, what the defendant has been led to expect in the way of a sentence unless this question is put directly to him or to the prosecuting attorney. In no observed instances did the general question of whether anyone threatened or promised anything to the defendant elicit a response that revealed a sentence promise by a prosecutor. Judges ask the question as a matter of routine and almost invariably receive the monosyllabic negative reply. The only way an improper or unhonored plea inducement comes to the attention of the court is if the defendant complains at the time of sentencing or appeals his conviction because the bargain was not kept." [5]

The American Bar Association *Standards Relating to Pleas of Guilty* do recommend an in-court inquiry by

---

[4] *Austin v. State, supra,* footnote 3, at page 734. *See also: Farrar v. State* (1971), 52 Wis. 2d 651, 662–664, 191 N. W. 2d 214 (Hallows, C. J. and Wilkie, J., concurring).

[5] Newman, *Conviction—The Determination of Guilt or Innocence Without Trial,* 30, 31 (1966).

the trial court in order to "give visibility to the plea discussions—plea agreement process." [6] In addition, both Pennsylvania and California have judicially mandated their trial courts to ascertain the nature of any prior plea negotiations.[7] The general reasons given for such a rule are that such on-the-record acknowledgments of a bargain serve both to protect the defendant in the event that a prosecutor reneges from his part of the bargain and to protect the state against later false claims of unkept bargains.

As part of the procedure followed in determining the voluntariness of a guilty plea, the standards specified in sec. 1.5 of the ABA *Standards Relating to Pleas of Guilty* must be observed with respect to ascertaining whether a plea agreement has been reached prior to the plea discussion and the terms of the agreement that has been reached. Sec. 1.5 provides as follows:

"The court should not accept a plea of guilty or nolo contendere without first determining that the plea is voluntary. By inquiry of the prosecuting attorney and defense counsel, the court should determine whether the tendered plea is the result of prior plea discussions and a plea agreement, and, if it is, what agreement has been reached. If the prosecuting attorney has agreed to seek charge or sentence concessions which must be approved by the court, the court must advise the defendant personally that the recommendations of the prosecuting attorney are not binding on the court. The court should then address the defendant personally and

[6] ABA *Standards Relating to Pleas of Guilty*, Approved Draft, 1968, pp. 29, 30, sec. 1.5, *Commentary. See also: Id.* at pages 60, 61, *Commentary* on sec. 3.1, Propriety of plea discussions and plea agreements.

[7] *Commonwealth v. Alvarado* (1971), 442 Pa. 516, 276 Atl. 2d 526; *People v. West* (1970), 91 Cal. Rptr. 385, 477 Pac. 2d 409. *See also:* The American Law Institute, *Model Code of Pre-Arraignment Procedure*, Tentative Draft No. 5 (1972), at page 110.

determine whether any other promises or any force or threats were used to obtain the plea." [8]

Here, there was no record made at the time of the guilty plea of the bargain, if any, that had been entered into. We accordingly must refer this petition for limited fact finding on the assertions made in the petition herein under paragraphs 5 (b) (involuntariness), and 5 (c) (ineffective counsel), and the answers thereto. After the petitioner Raymond White and his brother, Joseph White, testified at the hearing on Raymond's motion to withdraw his plea, and explained the nature of the plea bargain as they understood it, the trial court found the testimony "incredible." It is difficult to glean from the record of this proceeding precisely what the trial court found "incredible." It is possible that the "incredible" reference was to the testimony concerning the bargain which the White brothers testified had occurred. It is also conceivable that the "incredible" reference applied to Raymond White's position that the plea, by virtue of the bargain, was not voluntarily entered.

Assuming the guilty plea was made pursuant to the alleged plea bargain, petitioner contends that the plea was not knowingly and voluntarily entered.[9] In determining whether a plea has been entered voluntarily there are undoubtedly factors which may affect the freedom and volition with which a plea is given. These factors may be inherent in the nature of the plea or arise from circumstances outside the plea itself. These latter circumstances were recently noted by this court:

"There may be some instances where, literally, an appearance is the result of threat, coercion or fear, such

[8] ABA *Standards Relating to Pleas of Guilty, supra,* footnote 6, p. 29, sec. 1.5.

[9] *Ernst v. State* (1969), 43 Wis. 2d 661, 666, 170 N. W. 2d 713; *State v. Reppin* (1967), 35 Wis. 2d 377, 384, 385, 151 N. W. 2d 9.

as a threat of mob violence to the accused . . . or a prolonged stay in jail awaiting trial. In those and similar instances it is not the appearance in court that is constitutionally unfair, but the threat or coercion that induce a willingness to enter a plea of guilty 'to get it over with' that lacks necessary due process." [10]

This court has also acknowledged that inherent in certain pleas an element of coercion exists. In *Rahhal v. State*,[11] this court noted:

"However, a plea otherwise valid is not involuntary because induced or motivated by the defendant's desire to get the lesser penalty. A voluntary and intelligent choice always involves two or more alternatives, each having some compelling power of acceptance. The fact that a defendant must make a choice between two reasonable alternatives and take the consequences is not coercive of the choice finally made. The distinction between a motivation which induces and a force which compels the human mind to act must always be kept in focus. *When the defendant is not given a fair or reasonable alternative to choose from, the choice is legally coerced.*" (Emphasis added.)

Petitioner argues that the bargain he was proffered contained the element of "force which compels the human mind to act." This court has not heretofore precisely considered the voluntariness of a guilty plea bottomed upon a bargain which contemplates the dropping of criminal charges against a sibling or loved one in exchange for the plea. In *Drake v. State* [12] the defendant's subjective desire to plead guilty in order to avoid the implication of his wife in his jailbreak was deemed to be a self-imposed coercive element which did not weaken the voluntary and knowledgeable aspect of the plea. Although noting the potential danger to a confession's

[10] *Burkhalter v. State* (1971), 52 Wis. 2d 413, 419, 420, 190 N. W. 2d 502.

[11] (1971), 52 Wis. 2d 144, 151, 152, 187 N. W. 2d 800.

[12] (1969), 45 Wis. 2d 226, 233, 172 N. W. 2d 664.

voluntariness where there was a police threat to prosecute a suspect's girl friend on another charge if he did not confess to a charged crime, this court, in *Phillips v. State*,[13] did not, after viewing the "totality of the circumstances," feel the confession to be coerced. In yet another confession case, however, this court held that a threat to prosecute a suspect's wife, absent his confession, may have resulted in a coerced confession:

". . . If the Milwaukee police did threaten to prosecute defendant's wife as an accessory after the fact such threat is of a nature which could be coercive in inducing defendant to give the police a statement." [14]

Other courts have not looked favorably on petitioner's position. Thus, for example, in *Kent v. United States*,[15] a case wherein the defendant was told his fiancée would be prosecuted unless he pleaded guilty, the First Circuit Court of Appeals held:

". . . We are not prepared to say that it can be coercion to inform a defendant that someone close to him who is guilty of a crime will be brought to book if he does not plead. If a defendant elects to sacrifice himself for such motives, that is his choice, and he cannot reverse it after he is dissatisfied with his sentence, or with other subsequent developments." [16]

[13] (1966), 29 Wis. 2d 521, 530, 139 N. W. 2d 41.

[14] *Bosket v. State* (1966), 31 Wis. 2d 586, 598, 143 N. W. 2d 553. On remand the trial court determined the inculpatory statements by the defendant were voluntarily made and that the police did not threaten him with charging his wife as an accessory. This court subsequently affirmed such finding. *Bosket v. State* (1972), 55 Wis. 2d 121, 197 N. W. 2d 767. *See also: Rogers v. Richmond* (1961), 365 U. S. 534, 81 Sup. Ct. 735, 5 L. Ed. 2d 760.

[15] (1st Cir. 1959), 272 Fed. 2d 795.

[16] *Id.* at page 798. *See also: Latham v. State* (Mo. 1969), 439 S. W. 2d 737, for a compilation of other authorities.

Similarly, in *Cortez v. United States*,[17] the Ninth Circuit Court of Appeals held a plea of guilty voluntary despite the defendant's allegation that he had been coerced into the plea by the promise to reduce charges against his pregnant wife.

In only two cases do we find that an appellate court has actually remanded a case to the trial court in a similar situation. In *Crow v. United States*,[18] the Tenth Circuit Court of Appeals remanded a case to the trial court for a determination on the knowledgeability and voluntariness of a plea which was alleged to have been induced out of concern for another. Also, in *People v. Hollman*,[19] the Michigan Court of Appeals reversed and remanded to the trial court a denial of a plea withdrawal motion alleging the plea was coercive because the bargain contemplated charges being dropped against defendant's wife. Without comment on the voluntariness aspect, the court reversed on the basis that the trial court abused its discretion in denying the plea withdrawal motion which had been brought on the day of the sentence pronouncement.

While the American Law Institute's Advisory Committee was divided on the question, the American Law Institute's Council voted unanimously to eliminate a provision from the tentative draft of the Model Code of Pre-Arraignment Procedure which would have prohibited a prosecutor's offering leniency to another person in order to induce a defendant to plead guilty to a charge.[20] The Reporter made the following comment:

"[T]he Reporter still believes such inducements present a special risk that an innocent defendant will

[17] (9th Cir. 1964), 337 Fed. 2d 699, certiorari denied (1965), 381 U. S. 953, 85 Sup. Ct. 1811, 14 L. Ed. 2d 726.

[18] (10th Cir. 1968), 397 Fed. 2d 284.

[19] (1968), 12 Mich. App. 231, 162 N. W. 2d 817.

[20] The American Law Institute, *A Model Code of Pre-Arraignment Procedure, supra,* footnote 7, at page 68.

plead guilty and that a guilty defendant will receive treatment that does not meet his correctional needs and that he does not deserve in terms of his own character and dangerousness. Furthermore, allowing such offers may create a risk that a prosecutor who would otherwise be willing to offer greater leniency to the defendant avoids that issue by making the offer with respect to another person." [21]

We conclude that the voluntariness of a plea bargain which contemplates special concessions to another— especially a sibling or a loved one—bears particular scrutiny by a trial or reviewing court conscious of the psychological pressures upon an accused such a situation creates. But here, we do not reach a conclusion as to the voluntariness of the plea in this case because of the fact that the record is incomplete and further fact finding must be made as to the nature of the plea bargain, if any, and the effect such bargain had on the voluntariness of the plea.

As to the second issue raised concerning the alleged plea bargain, the record is again insufficient for us to determine whether or not such bargain, if made, is inconsistent with the public interest. Admittedly, the district attorney has great discretion in his decision to charge an accused for a given offense or offenses.[22] A district attorney also has great discretion in his negotiation of plea bargains.[23] Neither of these discretions, however, is unfettered.[24] Perhaps the clearest statement relating to prosecutorial discretion in the plea bargaining process is found in the American Law In-

---

[21] *Id.* at page 106.

[22] *State ex rel. Kurkierewicz v. Cannon* (1969), 42 Wis. 2d 368, 378, 166 N. W. 2d 255. *See also:* Brown, *The Wisconsin District Attorney and the Criminal Case*, 37, 38.

[23] *Mallon v. State* (1970), 49 Wis. 2d 185, 181 N. W. 2d 364.

[24] An example is found in sec. 968.02 (3), Stats., which allows a judge to permit the filing of a complaint where the district attorney refuses to do so or is unavailable.

stitute's tentative draft relating to pre-arraignment procedure. The draft mandates a trial court to consider whether:

". . . the agreement is in the public interest in that it takes into account not only the benefit to the public in securing a prompt disposition of the case, but also the importance of a disposition that furnishes the public adequate protection and does not depreciate the seriousness of the offense or promote disrespect for the law." [25]

A valid question is presented regarding the protection of the public versus the prompt disposition of criminal cases where, as may have occurred here, without countervailing considerations such as turning state's evidence or confessing to other crimes, a criminally accused person has the charges against him dismissed as a result of a plea bargain with another. This is especially relevant to the instant case where both petitioner and his brother were apprehended with the burglarized goods in their possession. Both being apparently equally guilty, does it promote the orderly administration of justice and the protection of the public to permit the charges against one to be dismissed?

Because we are handicapped by the incompleteness of the record both at the time of the taking of the guilty plea and in connection with the motion to withdraw the plea, we reserve our ruling on this question in these proceedings until the hearing is completed on the nature and details of the plea bargain, if any.

The third issue raised concerns a determination of whether or not Raymond White was without the effective assistance of trial counsel when his trial counsel negotiated the alleged plea bargain.

It is well established, and petitioner so acknowledges, that one attorney may represent more than one de-

[25] The American Law Institute, *A Model Code of Pre-Arraignment Procedure, supra,* footnote 7, at page 73.

fendant in a criminal proceeding without lessening the effectiveness of his services.[26] This court, in *Mueller v. State*,[27] has also made it unequivocally clear that some actual conflict of interests must be shown to exist:

"Thus, both *Glasser* and *Massey* [*Massey v. State* (1965), 28 Wis. 2d 376, 137 N. W. 2d 69] are in accord with the general rule that one attorney may represent two defendants indicted for participation in the same crime, unless the interests of the defendants are shown to be in conflict.

". . .

". . . There must be shown either some actual conflict or some other persuasive reason why . . . did not effectively represent both defendants." [28]

Petitioner argues that the principle of "half a loaf is better than none" operated with more puissance than usual in this case. Petitioner essentially believes that in his peculiar situation, with the dynamics of an already near-impossible choice operating, he especially needed the objective and unfettered assistance of counsel. What he received, petitioner asserts, was counsel who was also representing the interests of his brother which were as clearly antithetical to his own as interests could be.

While this court has noted that a conflict of interests is less likely to occur in guilty plea situations than in full blown trials,[29] we are convinced that the instant situation, if such a plea bargain as alleged was actually agreed upon, represents an example of what this court referred to in *Mueller* as "some other persuasive reason why . . . did not effectively represent

[26] *Glasser v. United States* (1942), 315 U. S. 60, 62 Sup. Ct. 457, 86 L. Ed. 680.

[27] (1966), 32 Wis. 2d 70, 145 N. W. 2d 84, certiorari denied (1967), 389 U. S. 862, 88 Sup. Ct. 118, 19 L. Ed. 2d 130.

[28] *Mueller v. State, supra,* footnote 27, at pages 77, 78. *See also: Witzel v. State* (1969), 45 Wis. 2d 295, 298, 172 N. W. 2d 692.

[29] *State v. Reppin, supra,* footnote 9, at page 387.

both defendants." [30] The alleged plea bargain did burden Raymond White with pressures of an extraordinary nature and did represent a situation in which a conflict of interest as between the two defendants that trial counsel represented existed. If on this reference a finding should be made and confirmed by this court that the alleged plea bargain was actually agreed to, it follows that a conflict of interest came to exist as between the two defendants, and for that reason petitioner should be permitted to withdraw his guilty plea and have his conviction set aside. New counsel should then be appointed to represent him in further proceedings.

*By the Court.*—It is ordered that the petition and answers thereto be referred to the Hon. WILLIAM F. JONES, presiding judge of the county court of Racine county, branch II, for fact finding in accordance with this opinion, findings of fact to be filed after such hearing and with this court on or before thirty days from this order.

CONNOR T. HANSEN, J. *(dissenting)*. I respectfully dissent from the majority opinion of the court.

The facts of this case do not require that the petitioner be granted habeas corpus relief. It is my opinion that the record in this case does not present a situation in which this court should exercise its discretion and permit issues to be raised in a habeas corpus proceeding which are generally not considered to be within the scope of such a proceeding. Furthermore, I do not consider this case to be an appropriate vehicle to consider the adoption of any further rules relating to plea agreements.

The facts in this case support a finding that the petitioner knowingly, voluntarily and understandingly entered his plea of guilty. The preliminary examinations

---

[30] *Mueller v. State, supra,* footnote 27, at page 78.

of the petitioner, Raymond White, and his brother Joseph, were consolidated. The facts testified to at the preliminary examination revealed that the burglarized dwelling was unoccupied at the time of the incident. A woman who lived across the street knew this and observed the entire incident. She observed the petitioner and his brother approach the house, one going to the front door and the other to the back of the house. When no one responded, the petitioner went to the back of the house. She observed the petitioner leaving the house with a blonde television set. She alerted the police who arrived in time to interrupt petitioner's operation and caused him to leave on the run after abandoning the television set. This woman made a positive in-court identification of the petitioner. The police recovered the television set where it had been abandoned and the owner identified the television set, not only by the general appearance and make, but also by the unusual fact of having the serial number. The petitioner was wearing cowboy-type boots at the time and the police officer testified that they exactly fit the marks in the snow at the scene of the burglary. He also testified a back window of the house had been forced open.

Petitioner was bound over for trial and on his first appearance in trial court entered a plea of not guilty. Several days later he again appeared in trial court and withdrew his not guilty plea and entered a plea of guilty. Before accepting the plea, the trial court very thoroughly examined the petitioner as to whether he was knowingly, understandingly and voluntarily entering his plea of guilty. When inquiring about the possible maximum sentence, the petitioner responded to the court's inquiry by stating that it was ten years. Ultimately, the court accepted the plea of guilty and ordered a presentence investigation, the report of which was made available

to petitioner's counsel. Among other things, the pre-sentence report contained nearly two pages of petitioner's past criminal record and reflected that approximately six months prior to the instant offense the petitioner had been placed on probation after having been found guilty of burglary in Milwaukee county.

Some three months after petitioner was sentenced, he moved the trial court to vacate the plea and sentence. This motion was primarily based upon the fact that the plea was involuntary because it was entered for the reason that the prosecution against his brother would be dismissed.

The only testimony adduced at this hearing was that of the petitioner and his brother, Joseph. The petitioner very specifically remembered the details of the trial court proceeding at arraignment and sentencing which he thought were favorable to him, and could not recollect any of his statements which were unfavorable to him. He testified that his trial counsel told him he would probably get a three-year sentence and that it would have been all right with him if he had received a three-year sentence. The trial court stated that the petitioner's testimony at this hearing was "incredible." While the majority of this court appears to have some doubt as to what the trial court meant by the use of the word "incredible," this writer is at a loss to think of a word that would more appropriately describe his testimony.

No appeal was taken from the denial of the petitioner's motion to vacate the plea and sentence. Now, long after the appeal time has expired and by means of a habeas corpus proceeding, the majority of the court reaches out to consider: (1) The voluntariness of the plea; (2) whether the plea bargain was against public policy; and (3) whether the petitioner was denied effective assistance of trial counsel. In reaching these issues in a

habeas corpus proceeding, it is my opinion that this court is establishing a precedent which, for all practical purposes, makes the statutory provisions for timely appeals a nullity.

It is my opinion that this case is expressly subject to the mandate of the United States Supreme Court in *North Carolina v. Alford* (1970), 400 U. S. 25, 91 Sup. Ct. 160, 27 L. Ed. 2d 162.[1] In *Alford,* the defendant, who proclaimed his innocence, entered a plea of guilty to second-degree murder which provided for a maximum thirty-year sentence, rather than stand trial for first-degree murder which provided for life imprisonment, and under certain circumstances the death penalty. In affirming the convictions of second-degree murder based upon the bargained plea, the United States Supreme Court stated in *Alford, supra,* page 31:

"We held in *Brady v. United States,* 397 U. S. 742 (1970), that a plea of guilty which would not have been entered except for the defendant's desire to avoid a possible death penalty and to limit the maximum penalty to life imprisonment or a term of years was not for that reason compelled within the meaning of the Fifth Amendment. *Jackson [United States v. Jackson* (1968), 390 U. S. 570]* established no new test for determining the validity of guilty pleas. The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. . . ."

This is precisely the choice the petitioner made in this case, and in my judgment a reading of the record leads to the inescapable conclusion that the petitioner voluntarily, knowingly and understandingly made his choice.

---

[1] *See: Young v. State* (1971), 49 Wis. 2d 361, 366, 182 N. W. 2d 262; *Farrar v. State* (1971), 52 Wis. 2d 651, 654, 191 N. W. 2d 214; and *Salters v. State* (1971), 52 Wis. 2d 708, 713, 191 N. W. 2d 19.

The majority of the court is of the opinion that before the issue of voluntariness of the plea can be determined, a further hearing is required. In reaching this decision, the majority seems to rely heavily on the dissenting Reporter's comment to the tentative draft of the Model Code of Pre-Arraignment Procedure of the American Law Institute and two cases from other jurisdictions [2] decided considerably prior to the decision of the United States Supreme Court in *Alford, supra.* I do not consider these to be persuasive authorities for the decision reached by the majority.

It is undisputed that the plea arrangement was not within the knowledge of the trial court at the time sentence was imposed. However, the majority opinion acknowledges that the time sequence of the decision in *Austin v. State* (1971), 49 Wis. 2d 727, 183 N. W. 2d 56, and the sentencing of the petitioner in the instant case is such that the *Austin* decision probably was not available to the trial court.

Although the plea arrangement is not set forth upon the record in the trial court, my examination of the record leaves no doubt but what there was, in fact, such a plea arrangement. The record now before us also reveals that the ultimate disposition of the case of the petitioner and his brother are exactly as contemplated by the plea arrangement. Such being the situation, and if this writer understands the mandate of the majority correctly, it is now the law of the case that the petitioner must be permitted to withdraw his plea, have his conviction set aside, and have new counsel appointed.

[2] The American Law Institute, *A Model Code of Pre-Arraignment Procedure*, Tentative Draft No. 5 (1972), at page 106. *See also: Crow v. United States* (10th Cir. 1968), 397 Fed. 2d 284, and *People v. Hollman* (1968), 12 Mich. App. 231, 162 N. W. 2d 817.

This result is reached, so reasons the majority, because some sort of conflict of interest existed because the same lawyer represented both the petitioner and his brother. I do not find a conflict of interest in the instant case. Both the petitioner and his brother consented to the dual representation in open court. There is not the slightest indication in the record of any dissatisfaction with the representation afforded, much less any indication of any belief or feeling of conflict so far as either the petitioner or his brother are concerned. The thought or idea of conflict of interest first comes into being months after petitioner had pleaded guilty and been sentenced. The ultimate conclusion of the majority seems to be that once the plea arrangement had been made by counsel and his clients, it was incumbent upon counsel to inform the court, withdraw from the case and have other counsel appointed to review his efforts. I cannot subscribe to such a result and conclude by observing that henceforth the trial judges could, with considerable justification, be reluctant to ever accept a plea of guilty in a criminal case. Relief should be denied.

I am authorized to state that Mr. Justice HANLEY and Mr. Justice ROBERT W. HANSEN join in this dissent.