STATE of Wisconsin, Plaintiff-Respondent,

v.

Scott G. ZUNIGA, Defendant-Appellant.†

Court of Appeals

*No. 01–2806–CR. Submitted on briefs June 20, 2002.—Decided August 14, 2002.*

## 2002 WI App 233

(Also reported in 652 N.W.2d 423.)

† Petition to review denied 11-12-02.

626

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Chad G. Kerkman* of *Kerkman Law Offices, S.C.*, of Twin Lakes.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Alan Lee*, assistant attorney general.

Before Nettesheim, P.J., Brown and Anderson, JJ.

¶ 1. BROWN, J. Scott G. Zuniga appeals from a judgment of conviction and an order denying his motion for resentencing. He asserts that the State willfully breached his plea agreement by failing to present the negotiated sentencing recommendation. He now seeks specific performance of the plea agreement. In our view, at a bond hearing which occurred prior to sentencing, the parties agreed to amend the sentencing proposal to allow the State to offer a harsher sentence if Zuniga engaged in misconduct during his release. At the sentencing hearing, the State alleged that Zuniga had indeed violated the conditions of release and that additional charges had been filed against him. The State then recommended prison rather than probation. Under these circumstances, the State's new sentencing recommendation was clearly within the scope of the amended plea agreement. We affirm the judgment and order.

¶ 2. Zuniga agreed to plead guilty to operating a motor vehicle without the owner's consent and second-

627

degree recklessly endangering safety. The State agreed to dismiss and read in the violation of a restraining order. On the charge of operating a vehicle without the owner's consent, the State offered to recommend eighteen months of incarceration, one year of extended supervision, both stayed, and four years of probation. On the charge of recklessly endangering safety, the State agreed to recommend one year of incarceration, and one year of extended supervision, consecutive to the other charge and again stayed, with four years of probation and six months in the county jail as a condition of probation. At the hearing on December 11, 2000, the State presented the plea agreement and Zuniga pled guilty to both charges.

¶ 3. On December 18, 2000, Zuniga and counsel appeared at a bond hearing requesting that Zuniga be released on signature bond. Zuniga's counsel argued that "Mr. Zuniga would like an opportunity to prove to your Honor that he can behave himself." He asked that a condition of bond require Zuniga not to consume alcohol and, in addition, require periodic monitoring through random urinalysis. Trial counsel further stated:

> [I]f your Honor gives him the opportunity to be released on bond with a signature bond, [Zuniga] can come before your Honor on sentencing date and the argument for probation, I think, will carry that much more weight. Of course, Mr. Zuniga also understands that if he is released on bond and if he screws up, the argument for imprisonment then becomes a greater argument and gives Mr. Zuniga, I think, the incentive to comply with the requirements that may be set up.

¶ 4. The prosecutor responded that releasing Zuniga into the community without addressing his alcohol dependency and mental health issues would

"simply set[] Mr. Zuniga up for failure." Nevertheless, the trial court accepted Zuniga's assurances concerning his behavior while out on bond and explicitly referenced the State's plea agreement and the impact his behavior could have on the sentencing recommendation.

> THE COURT: Mr. Zuniga, you've already pled to some charges that could result in you going to prison. The recommendation of the State is going to be not prison, but probation. You could certainly change their minds by screwing up while you're out on bond. Do you understand that?
>
> MR. ZUNIGA: Yes, I do.

The court then granted Zuniga's request for release with the condition that he not consume any alcohol or controlled substances and that he submit to random urinalysis.

¶ 5. On January 24, 2001, after entry of his plea and release on bond and before sentencing, Zuniga was charged with criminal damage to property, disorderly conduct and bail jumping, all as a habitual offender. At sentencing on February 12, 2001, the State acknowledged its original offer to recommend an imposed and stayed sentence and probation. The State then informed the court that it considered Zuniga's conduct while out on bond to be a change of circumstances which relieved the State from its obligation to recommend probation. On the charge of recklessly endangering safety, the State recommended an enhanced sentence of two years of incarceration and two years of extended supervision. On the charge of operating a vehicle without consent, the State recommended two years of incarceration, with two years of extended supervision, stayed, and four years of probation.

¶ 6. Zuniga's counsel objected to the State's failure to comply with the negotiated plea agreement and requested to withdraw the plea. The court denied the request, stating that it had advised Zuniga that it was not required to follow the recommendation of the State and noting that the presentence investigation writer recommended a harsher sentence than that requested by the State. The court sentenced Zuniga to four-year terms on each charge to run concurrently, consisting of two years of confinement and two years of extended supervision.

¶ 7. Zuniga then filed a postconviction motion for resentencing based on his claim that the State had breached the plea agreement. The court denied the motion and Zuniga now appeals.

■

¶ 8. In *State v. Williams*, 2002 WI 1, 249 Wis. 2d 492, 637 N.W.2d 733, the supreme court set forth the standards of review in breach of plea agreement cases. The court concluded that the terms of the plea agreement and the historical facts of the State's conduct that allegedly constitute a breach of a plea agreement are questions of fact. *Id.* at ¶ 2. Whether the State's conduct constitutes a breach of a plea agreement and whether the breach is material and substantial are questions of law. *Id.*

¶ 9. The State asserts that the issue in this case is whether Zuniga's misconduct between the plea and the sentencing breached the plea agreement. It relies on *State v. Windom*, 169 Wis. 2d 341, 351, 485 N.W.2d 832 (Ct. App. 1992), for the proposition that a post-plea change of circumstances can provide a justifiable basis for the prosecutor to refuse to make the agreed-upon recommendation. We do not agree that *Windom* is applicable to this case.

630

¶ 10. In *Windom*, we relied on *State v. Pascall*, 358 N.E.2d 1368, 1369 (Ohio Ct. App. 1972), for the proposition that a subsequent conviction excuses the prosecutor from recommending probation at resentencing. *Windom*, 169 Wis. 2d at 351–52. However, we were careful to note in *Windom* that the State had fulfilled its duty under the plea agreement by remaining silent at the original sentencing hearing, and the scope of the plea agreement was limited to the original hearing. *Id.* Thus, the issue in *Windom* was not whether changed circumstances justify a prosecutor's failure to make the agreed-upon recommendation; it was whether, after the State honored its promise to not make a sentence recommendation, it was bound by that plea agreement when the defendant was resentenced for later violating his probation. We held that the defendant's commission of a new crime and the resulting probation revocation constituted a "new factor" warranting the prosecutor's change in position at the resentencing. *Id.* at 350–51. In this instance, we are reviewing the State's obligation under a plea agreement for the original sentence, not a subsequent and separate sentence hearing as in *Windom*. The case is inapposite.

■

¶ 11. In addition, we are not persuaded that the holding in *Windom* permits a prosecutor to unilaterally retreat from a plea agreement whenever a defendant engages in criminal misconduct after pleading. According to the State's understanding of the law, when a defendant breaches the plea agreement between the plea taking and sentencing, the defendant's plea remains on the table while the State is relieved from performing the promise that induced the plea. That is incorrect. Our supreme court has instructed that when a breach is material and substantial, the remedy is to

vacate the plea agreement and the guilty plea, placing both parties to the agreement back to their preagreement positions. *See State v. Rivest,* 106 Wis. 2d 406, 414, 316 N.W.2d 395 (1982). They can then either negotiate a new agreement or proceed to trial.

¶ 12. Zuniga argues that "[t]here would be manifest impropriety in unilaterally allowing the State to escape from the obligation it undertook in the plea agreement without a Court finding." Zuniga is correct that once the defendant enters a plea, an evidentiary hearing is necessary to determine whether a breach of the agreement has occurred before the State may be permitted to withdraw from it. *See State v. Paske,* 121 Wis. 2d 471, 473–74, 360 N.W.2d 695 (Ct. App. 1984). Zuniga's reliance on this rule is misplaced, however, because the plea agreement ultimately reached in this case was not one which obligated the State to recommend an imposed and stayed sentence with probation but rather one which allowed the State to recommend an enhanced sentence if Zuniga violated the conditions of his release while on bond. In other words, we view the intervening bond hearing, which occurred after Zuniga entered his plea and before sentencing, as functionally an amendment to the plea agreement. As the record makes perfectly clear, the trial court was very careful to warn Zuniga that if it granted him bail and he "screwed up" while out on the streets, the State would be free to change its sentencing recommendation based upon his misconduct. Zuniga acknowledged and agreed to this provision which we view as an amendment to the plea agreement.

¶ 13. We find support for this approach in *Paske.* In that case, the prosecutor changed its position at the sentencing hearing based upon the defendant's escape

from prison while he was awaiting sentencing. *Paske*, 121 Wis. 2d at 473. Under the new agreement, the prosecutor offered to make no sentence recommendation rather than adhere to its earlier recommendation of an eleven-year ceiling. Paske accepted the offer. *Id.*

¶ 14. On appeal, we rejected Paske's attempt to enforce the original agreement. We stated that the crucial inquiry in that case was whether the defendant was fully and fairly apprised of the consequences of his ultimate choice as to his pleas. *Id.* at 474. "It is only when the consensual character of the plea is called into question that the validity of a guilty plea may be impaired." *Id.* We then noted that the State's proposed modification to the executory contract was unequivocally consented to by Paske when he reaffirmed his earlier pleas and spurned the State's offer not to oppose any requested withdrawal of the pleas. *Id.* at 475. We find persuasive the following language in *Paske*:

> Under these circumstances, Paske's ultimate bargain with the state was not for a plea recommendation with a ceiling of eleven years but rather for no recommendation. The circumstances surrounding this modification of the plea agreement violate no standards of fairness or decency nor any factors bearing upon due process. Paske's ultimate pleas were in no sense induced by the prosecution's withdrawn offer. Paske clearly opted to take his chances under the terms of the modified plea agreement.

*Id.* at 475.

■

¶ 15. Zuniga fully participated in the bond hearing, wholly aware that if he prevailed in obtaining release, the State would seek a longer sentence if he thereafter engaged in misconduct. Based on this record, we conclude that the parties effectively modified the

plea agreement by making the State's obligation conditional upon Zuniga's good behavior while in the community. In proceeding under these circumstances, Zuniga "opted to take his chances under the terms of the modified plea agreement." *Id.*[1]

¶ 16. We are cognizant that a sentencing court may not participate in a plea agreement. *Williams*, 2002 WI 1 at ¶ 24. In this instance, the trial court suggested the modification to the plea agreement in response to Zuniga's motion. The parties voluntarily agreed to the modification. No consensus exists as to what constitutes judicial participation. Sarah N. Welling, *Victim Participation in Plea Bargains*, 65 WASH. U. L.Q. 301, 317 n.73 (1987). In *State v. Wolfe*, 46 Wis. 2d 478, 488,

---

[1] By comparison, in *State v. Scott*, 230 Wis. 2d 643, 647, 602 N.W.2d 296 (Ct. App. 1999), the State advanced a modified sentencing proposal which afforded the State the ability to recommend a significantly longer sentence. Scott accepted the new proposal. *Id.* He subsequently sought resentencing on the grounds that his trial counsel provided ineffective assistance by failing to advise him that he had the right to seek enforcement of the original plea agreement under which he entered his no contest pleas. We rejected the State's attempt to rely on *State v. Paske*, 121 Wis. 2d 471, 360 N.W.2d 695 (Ct. App. 1984), to justify its change of position at sentencing:

> The differences between *Paske* and the present case are palpable, and consequently, we reject the State's reliance on the *Paske* case. Prior to sentencing, Paske conspired to escape from jail and was found guilty of that offense after the original plea agreement had been reached . . . . In the instant case . . . [o]nce Scott and the State reached an agreement and the no contest pleas were entered, Scott did nothing to contravene, violate or breach the agreement. Thus, Scott had a constitutional right to seek enforcement of the plea agreement.

*Scott*, 230 Wis. 2d at 663–64 (emphasis omitted).

175 N.W.2d 216 (1970), the supreme court considered the impropriety of judicial participation in plea bargaining and stated that the vice of such judicial participation is that it destroys the voluntariness of the plea.[2] It is true that in this case the suggestion to modify the agreement came from the bench, but the record does not show that the suggestion destroyed the voluntariness of Zuniga's plea. The suggestion was neither threatening nor coercive,[3] but was intended to motivate Zuniga to behave while out on a signature bond. Indeed, Zuniga himself persuaded the court that if he behaved upon release he could then appear at sentencing and argue for probation with "much more weight." Under these circumstances, the parties may consent to an amendment to the plea agreement suggested by the trial court without raising a question of fundamental fairness. *See id.* at 488.

¶ 17. In sum, we reject the State's argument that because Zuniga engaged in misconduct between entry of the plea and sentencing, the State was excused as a matter of law from fulfilling its promises under the agreement. Instead, we determine that under the particular facts of this case the plea agreement was amended by the parties during the bond hearing. The circumstances surrounding this amendment of the plea

[2] In *State v. Wolfe*, 46 Wis. 2d 478, 487, 175 N.W.2d 216 (1970), the court held that the trial judge did not participate in negotiations by convening a pre-plea conference with the parties where the judge allegedly agreed to rely on a presentence investigation report for sentencing.

[3] Threatening a defendant by intimating that a greater sentence will be meted out if the defendant goes to trial and is found guilty than if he or she pleads guilty has been condemned as being coercive. *Rahhal v. State*, 52 Wis. 2d 144, 151, 187 N.W.2d 800 (1971).

agreement violate no standards of fairness or decency nor any factors bearing upon due process. *See Paske*, 121 Wis. 2d at 475. Zuniga was fully cognizant of the risks inherent in his request for release and the terms under which his request was granted. Zuniga's participation in the amended plea agreement was freely and voluntarily made and was not the product of any violation of due process, and while the sentence meted out by the trial court did not comport with the terms of the original plea agreement, it fully comported with the agreement as amended.

*By the Court.*—Judgment and order affirmed.