STATE of Wisconsin, Plaintiff-Respondent,

v.

Corey D. WILLIAMS, Defendant-Appellant.

Court of Appeals

*No. 02–1651–CR. Submitted on briefs February 7, 2003.
—Decided May 1, 2003.*

2003 WI App 116

(Also reported in 666 N.W.2d 58.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Corey D. Williams*, pro se.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Marguerite M. Moeller*, assistant attorney general.

Before Dykman, Roggensack and Deininger, JJ.

¶ 1. ROGGENSACK, J. Corey Williams appeals his conviction for cocaine possession with intent to deliver, contrary to WIS. STAT. § 961.41(1m)(cm)3 (2001–02),[1] and possession of tetrahydroncannabinols (THC) with intent to deliver, contrary to § 961.41(1m)(h)1, both as party to the crime, and the circuit court's order denying postconviction relief. Williams argues that he is entitled to withdraw his guilty pleas because the trial judge improperly initiated and participated in the discussions leading up to his plea agreement. We conclude that judicial participation in the bargaining process that precedes a defendant's plea raises a conclusive presumption that the plea was involuntary. Therefore, we adopt a bright-line rule barring any form of judicial participation in plea negotiations before a plea agreement has been reached. Because it is undisputed that the trial judge participated in the negotiations that led up to Williams's pleas, Williams is entitled to withdraw his pleas. Accordingly, we reverse the order denying relief; we vacate the judgment of conviction for both offenses; and remand

___

[1] All further references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

for further proceedings on all charges originally filed against Williams. On remand, we order that the case be assigned to a different judge.

## BACKGROUND

¶ 2. In March 2000, Williams was charged in Wood County with possession of THC with intent to deliver and possession of 57.4 grams of cocaine with intent to deliver. In a separate complaint, Williams was charged with one count of delivery of cocaine. The circuit court consolidated the two cases and scheduled the matter for jury trial on January 24, 2001.

¶ 3. On the morning of January 24, at the outset of the trial proceedings, the trial judge invited Williams, his attorney and the district attorney to "have a little chat in chambers." Following the unrecorded conference, the parties returned to the court room and the judge announced that "with the assistance or urging . . . of the Court, that a compromise . . . has been reached between the Government and the Defendant." The district attorney explained that the State would dismiss the delivery of cocaine charge against Williams and amend the possession of cocaine charge to "reflect an amount of cocaine 15 grams to 40 grams, which reduces that penalty." In exchange, Williams would plead guilty to possession of THC with intent to deliver and possession of cocaine with intent to deliver. Williams's attorney agreed with the district attorney's description of the plea agreement. The trial judge then asked Williams whether it was his understanding, "after all of these conversations," that he would plead guilty to "possession of THC with intent to deliver and possession of less

than 40 grams of cocaine" and whether he was prepared to proceed; Williams answered "Yes." A lengthy plea colloquy followed.[2]

¶ 4. During the colloquy, the trial judge endeavored to make a record of what occurred in chambers. The judge reiterated that he had told Williams that he "was not inclined to send [him] to prison for 30 years" but that "there is still some likelihood that you could go to prison . . . the worst you could be looking at would be maybe eight to ten years." He also recalled that he had told Williams:

> [O]n one side that as a citizen or a member of the community in Wood County that it makes me pretty angry when I find people from Milwaukee coming up here delivering cocaine, and it makes everybody else around here pretty mad. On the other side, I understand that you're a young man, and I don't like long-term incarceration for nonviolent offenses for young people, so that—I explained that from this Judge's point of view that I'm doing some balancing, and that I don't know what I'm going to do.

Williams responded that he understood that the judge "intend[ed] to keep an open mind, to read the Presentence and balance those considerations" and sentence him appropriately. Williams also stated that he understood the nature of the charge and the constitutional rights he was waiving.

¶ 5. Following the colloquy with Williams, the judge addressed Williams's attorney and inquired whether the court had "fairly recreated" the conversation that had occurred in chambers between the parties.

---

[2] Because Williams's argument centers exclusively on the propriety of the circuit court's participation in the plea bargaining process prior to entering his plea, the background facts relate primarily to the parties' conversation in chambers.

Williams's attorney recalled that "there was also a discussion of what in my experience is commonly termed, I cannot penalize you for having a trial, but I can reward you for being forthcoming" and the State "preserving his right . . . to argue for greater time." He reiterated:

> You did talk about the numbers of eight to ten as possibly years in prison should [Williams] go to trial and lose. You expressed your anger that drugs are in Wood County. You expressed your anger about the fact that they are very often in your opinion brought up—or opinion and/or experience brought in from Milwaukee County.
>
> You also stated that . . . Mr. Williams might not receive County Jail time, which would be up to a year. If it goes beyond a year, then it's prison time. But you couldn't guarantee what you were going to do. You didn't give him any ·specific number, but there was a discussion of a range from one to three as a possibility . . . .

The court responded that Williams's attorney's recollection of the plea negotiations was "fairly consistent . . . with what I recall."

¶ 6. The court next acknowledged its role in the plea bargaining process stating, "I'm understanding that to some extent it's not appropriate for Courts to get involved in the plea bargaining" and asked if there was "anything else from that meeting that . . . ought to be put on the record or disclosed." The parties answered "No." The judge informed Williams of the collateral consequences of his pleas and established an evidentiary basis for the charges. The court then accepted Williams's pleas as "freely, voluntarily and intelligently entered" and found him guilty of possession of THC

with intent to deliver and possession of less than 40 grams of cocaine with intent to deliver.

¶ 7. A sentencing hearing was held on March 29, 2001. Prior to sentencing, the district attorney advised the court that he had agreed to recommend a five-year sentence on the cocaine charge as part of the plea bargain. Accordingly, the court sentenced Williams to a total of ten years for possession of cocaine, five years of initial confinement followed by five years extended supervision. The court stayed sentencing on the possession of THC charge and placed Williams on three years probation to be served concurrent to the cocaine charge.

¶ 8. Subsequent to sentencing, Williams filed a motion to withdraw his guilty pleas, alleging that "he was promised 1 to 3 years in chambers by Judge Zappen and that he has not received [the] benefit of the bargain." Williams further alleged that he agreed to plead guilty instead of going to trial because he felt "assured of a sentence of 1 to 3 years." A hearing on the motion was scheduled for August 10, at which Williams testified that on the morning of trial, he did not intend to plead guilty until the "little chat in chambers." Williams explained to the court:

> I had no intentions of pleading guilty, but by my being young and inexperienced, being ignorant of the law, you invited me into [your] chambers, you influenced me and pressured me into giving a guilty plea. As you said, if I was to lose trial, it is a good chance I would receive a seven to ten year sentence.
>
> Your Honor, since I originally turned down a plea bargain in the hallway, I can honestly say if you wouldn't have taken me in your chambers, I wouldn't have never pled guilty. Myself being in a powerful judge's chambers, you eroded my ability to make a decision of my own.

Following Williams's testimony, that included examination by the prosecutor and trial court regarding what had occurred at the plea hearing, the court found that Williams's plea was entered voluntarily. The court explained:

> [I]f I weigh the things you're telling me today and believing you—I'm not going to say you're making any of this stuff up, okay, but if I weigh what I hear today and if I weigh it against what took place fresh on the day of the plea, this is the way it goes. . . .
>
> You were with your parents, and you'd been with your parents at all stages of these proceedings. . . . You were not in custody. There's no coercive factor right there. You were with your attorney. . . .
>
> I understand what you feel. Okay. You feel you've been railroaded. You feel you didn't get your trial. I understand that. But at this point in time the record does not support me allowing you to withdraw the plea because at the time it appeared in all respects that this was a free and voluntary thing.

Accordingly, the court denied the motion. Williams appeals.

## DISCUSSION

**Standard of Review.**

¶ 9. The question of whether a defendant may withdraw a guilty plea is addressed to the discretion of the circuit court. *State v. Rock*, 92 Wis. 2d 554, 559, 285 N.W.2d 739, 742 (1979). We will not disturb such a decision unless the court erroneously exercised its discretion. *State v. Van Camp*, 213 Wis. 2d 131, 139, 569 N.W.2d 577, 582 (1997). However, when a defendant

establishes the denial of a constitutional right, withdrawal of the plea is a matter of right, and the circuit court has no choice but to grant the defendant's motion for relief. *Id.*; *State v. Bangert*, 131 Wis. 2d 246, 283, 389 N.W.2d 12, 30 (1986).

¶ 10. A guilty plea that is not entered voluntarily, knowingly and intelligently violates due process. *Van Camp*, 213 Wis. 2d at 139, 569 N.W.2d at 582. Thus, the determination of whether a plea is voluntarily made presents a question of constitutional fact. *State v. Bollig*, 2000 WI 6, ¶ 13, 232 Wis. 2d 561, 605 N.W.2d 199. We review questions of constitutional fact independent of a circuit court's determination. *Bangert*, 131 Wis. 2d at 283, 389 N.W.2d at 30. However, we will not upset a circuit court's findings of evidentiary or historical fact unless the findings are clearly erroneous. *Id.* at 283–84, 389 N.W.2d at 30.

## Judicial Participation in Plea Agreements.

¶ 11. A defendant's guilty or no contest plea must be voluntary. *Bangert*, 131 Wis. 2d at 260, 389 N.W.2d at 20; *see also Waley v. Johnston*, 316 U.S. 101, 104 (1942) (A coerced plea violates a defendant's fundamental constitutional rights). The circuit court is charged with the duty to ascertain whether the plea was voluntary, *Bangert*, 131 Wis. 2d at 261, 389 N.W.2d at 20, and to impose a fair sentence consistent with the protection of the public, the gravity of the offense and the rehabilitative needs of the defendant. *McCleary v. State*, 49 Wis. 2d 263, 274–75, 182 N.W.2d 512, 518 (1971). Judicial participation in plea bargaining, therefore, presents special cause for concern. It has been said:

> The unequal positions of the judge and the accused, one with the power to commit to prison and other deeply concerned to avoid prison, at once raise a question of fundamental fairness. When a judge becomes a participant in plea bargaining he brings to bear the full force and majesty of his office. His awesome power to impose a substantially longer or even maximum sentence in excess of that proposed is present whether referred to or not. A defendant needs no reminder that if he rejects the proposal, stands upon his right to trial and is convicted, he faces a significantly longer sentence. ... Intentionally or otherwise, and no matter how well motivated the judge may be, the accused is subjected to a subtle but powerful influence.

*United States ex rel. Elksnis v. Gilligan*, 256 F. Supp. 244, 254 (D.C.N.Y. 1966). Therefore, "[t]he vice of judicial participation in the plea bargaining is that it destroys the voluntariness of the plea." *State v. Wolfe*, 46 Wis. 2d 478, 488, 175 N.W.2d 216, 221 (1970). The general rule in Wisconsin with regard to plea negotiations has been that "[a] trial judge should not participate in plea bargaining." *Id.* at 487, 175 N.W.2d at 221.

¶ 12. The State does not dispute this basic legal tenet. Indeed, the State concedes that the circuit court violated Wisconsin's "longstanding" prohibition on judicial involvement in plea bargaining. However, the State contends that although judicial participation in plea bargaining is proscribed by case law, it does not entitle a defendant to withdraw his or her guilty plea absent a showing of prejudice. The State cites *State v. McCallum*, 208 Wis. 2d 463, 473, 561 N.W.2d 707, 710 (1997), for the proposition that a defendant seeking to withdraw a plea after sentencing, bears "the heavy burden of establishing, by clear and convincing evidence, that withdrawal of the plea is necessary to correct a manifest

239

injustice." Accordingly, the State argues that because Williams failed to show that the circuit court's participation in the plea negotiations rendered his guilty pleas involuntary, which the State agrees would satisfy the "manifest injustice test," he is not entitled to withdraw his pleas. We disagree.

¶ 13. One of the supreme court's first discussions of the impropriety of judicial participation in the plea bargain process occurred in *Wolfe*, 46 Wis. 2d at 487, 175 N.W.2d at 220. There, the trial judge held a pretrial conference in chambers with the defendant's trial attorney and the district attorney. *Id.* The defendant moved to withdraw his guilty plea on the basis that the trial judge participated in plea bargaining by agreeing during that conference to rely on the recommendation of the presentence report in sentencing. *Id.* Although the supreme court ultimately held that the trial judge did not participate in plea negotiations, the court instructed that a trial judge should not participate in plea bargaining because it undermines the voluntariness of the plea. As the supreme court explained:

> (1) [T]he defendant can receive the impression from the trial judge's participation in the plea discussions that he would not receive a fair trial if he went to trial before the same judge; (2) if the judge takes part in the preplea discussions, he may destroy his objectivity when it comes to determining the voluntariness of the plea when it is offered; (3) judicial participation to the extent of promising a certain sentence is inconsistent with the theory behind the use of the presentence investigation report, and (4) the defendant may feel that the risk of not going along with the disposition which is apparently desired by the judge is so great that he will be induced to plead guilty even if innocent.

*Id.* at 488, 175 N.W.2d at 221 (footnote omitted). There-

240

fore, to counteract the high and unacceptable risk of a coerced plea, the court fashioned a prophylactic rule prohibiting judicial participation in plea discussions *before* an agreement has been reached. *Id.* at 488–89, 175 N.W.2d at 221. The court noted that a judge may be informed of the final bargain once reached, before the guilty plea is formally offered.[3] The court posited that such limited action by the trial judge encourages a "greater degree of certainty that the bargain will be accepted," which is necessary for the operation of the system. *Id.* at 489, 175 N.W.2d at 221.

¶ 14. The supreme court reaffirmed *Wolfe* in *Rahhal v. State*, 52 Wis. 2d 144, 187 N.W.2d 800 (1971). In *Rahhal*, the supreme court held that "[t]rial judges should . . . abstain from injecting themselves into plea bargaining or influencing the making of a plea. A trial judge may accept a plea bargain, but he should not do the bargaining." *Rahhal*, 52 Wis. 2d at 150, 187 N.W.2d at 804. In addition, the *Rahhal* court warned that when "a trial judge interjects himself into plea bargaining," he or she is placed in the untenable position of becoming a

---

[3] The court modeled its analysis of the proper judicial role in considering pleas after the ABA standards for trial judges which provides:

> If a tentative plea agreement has been reached which contemplates entry of a plea of guilty or nolo contendere in the expectation that other charges before that court will be dismissed or that sentence concessions will be granted, upon request of the parties the trial judge may permit the disclosure to him of the tentative agreement and the reasons therefor in advance of the time for tender of the plea. He may then indicate to the prosecuting attorney and defense counsel whether he will concur in the proposed disposition if the information in the presentence report is consistent with the representations made to him.

*State v. Wolfe*, 46 Wis. 2d 478, 489, 175 N.W.2d 216, 221 (1970).

"material witness" should the defendant later move to withdraw his or her plea.[4] *Id.* Simply put, a trial judge "cannot be a witness and the finder of fact, too." *Id.*

¶ 15. The *Wolfe* directive prohibiting judicial participation in plea bargaining is a foundational rule. Cases following *Wolfe* have consistently interpreted it as establishing the proper role of the judiciary in the plea process in order to preserve the voluntariness of the plea. *See Farrar v. State*, 52 Wis. 2d 651, 657, 191 N.W.2d 214, 217 (1971) ("[T]he entire sentencing process is to be a search for the truth and an evaluation of alternatives. Any advance understanding between prosecutor and defendant must not involve the trial judge . . . or court."); *State v. Erickson*, 53 Wis. 2d 474, 481 192 N.W.2d 872, 876 (1972) ("[T]his court has firmly stated that a trial judge is not to participate in plea bargaining."); *Melby v. State*, 70 Wis. 2d 368, 385, 234 N.W.2d 634, 643 (1975) ("[S]ince *State v. Wolfe*, 46 Wis. 2d 478, 175 N.W.2d 216 (1970), this court has made it clear that trial courts are not to participate in plea bargains."); *State v. Williams*, 2002 WI 1, ¶ 24, 249 Wis. 2d 492, 637 N.W.2d 733 ("[A] sentencing court may not participate in a plea agreement.").

---

[4] *Rahhal v. State*, 52 Wis. 2d 144, 187 N.W.2d 800 (1971), plainly demonstrates the quandary in the case at hand, wherein the trial judge was forced to "pit" his recollection of the plea negotiation against Williams's recollection. For example, at the hearing for postconviction relief, Williams testified that regarding sentencing, the court "emphasized more around the one to three [years]." The court responded, "I did not, sir. I did not." Later the court stated, "I don't think I got involved in plea bargaining, in throwing numbers. Now, if your memory is different from that, I'm sorry."

¶ 16. We read *Wolfe* and its progeny as instructing that there should be no judicial participation in the plea bargaining process. We note that the cases limit this rule to judicial participation in the plea bargaining process itself, before an agreement is reached. Therefore, a judge may be informed of the final agreement once it has been reached and before the guilty plea is formally entered. *Wolfe*, 46 Wis. 2d at 489, 175 N.W.2d at 221. In our view, a "bright-line" rule will eliminate the unacceptably high risk of a coerced plea and will protect the integrity of the judicial process. *See United States v. Bruce*, 976 F.2d 552, 557 (9th Cir. 1992) ("The judge's role must be that of a neutral arbiter of the criminal prosecution: his involvement in the adversary process of plea negotiation is beyond and detracts from that judicial duty."). Furthermore, a bright-line rule will preserve the circuit court's impartiality after an agreement is reached when the court is called upon to ascertain the voluntariness of the plea, to preside over a trial if the defendant chooses not to plead and to impose an appropriate sentence. *See Wolfe*, 46 Wis. 2d at 488, 175 N.W.2d at 221. In sum, for the reasons first articulated by *Wolfe* in 1970, that remain germane to our analysis here, we conclude there is an absolute prohibition of judicial involvement in the negotiations that lead up to a plea bargain. Accordingly, a defendant who has entered a plea, following a judge's participation in the plea negotiation, is conclusively presumed to have entered his plea involuntarily and is entitled to withdraw it.

¶ 17. The State challenges our adoption of a bright-line rule and its conclusive presumption of involuntariness by arguing that we are proscribed from so holding by our decision in *State v. Zuniga*, 2002 WI App

233, 257 Wis. 2d 625, 652 N.W.2d 423, *review denied*, 2003 WI 1, 258 Wis. 2d 108, 655 N.W.2d 128 (Wis. Nov. 12. 2002) (No. 01–2806–CR). The State quotes language from *Zuniga* where we stated that a circuit court's suggestion to modify a plea agreement "was neither threatening nor coercive," and that the "suggestion [did not] destroy[] the voluntariness of Zuniga's plea." *Id.* at ¶ 16. We concluded that "[u]nder these circumstances, the parties may consent to an amendment to the plea agreement suggested by the trial court without raising a question of fundamental fairness." *Id.* The State contends that under *Zuniga*, we are required to analyze whether the court's participation in the plea bargaining actually rendered the plea involuntary. We disagree.

¶ 18. In *Zuniga*, Zuniga and the district attorney negotiated a plea agreement, presented it to the court at the plea hearing and Zuniga pled guilty. *Id.* at ¶ 2. Approximately one week later, Zuniga appeared at a bond hearing to request that he be released on signature bond. Zuniga argued that he "would like an opportunity to prove . . . that he can behave himself" and asked that a condition of bond require that he not consume alcohol and undergo periodic urinalysis. *Id.* at ¶ 3. The district attorney objected to Zuniga's request; nevertheless, the court released Zuniga subject to the prescribed conditions. In doing so, the court stated: "you've already pled to some charges that could result in you going to prison. The recommendation of the State is going to be not prison, but probation. You could certainly change their minds by screwing up while you're out on bond. Do you understand that?" Zuniga answered, "Yes." *Id.* at ¶ 4. Prior to sentencing, Zuniga was charged with criminal damage to property, disorderly conduct and bail jumping. *Id.* at ¶ 5. According to the court's modification of the State's obligation

under the plea agreement, the State did not recommend probation; Zuniga received two years confinement and filed a postconviction motion for resentencing based on his claim that the State had breached the plea agreement. *Id.* at ¶¶ 5–7.

¶ 19. Contrary to the State's assertion, *Zuniga* is consistent with our adoption of a bright-line rule prohibiting judicial participation in plea bargaining. It is true that in *Zuniga* the suggestion to modify the State's obligations under the agreement came from the bench. However, we did not expressly conclude that the court's suggestion amounted to judicial participation in the plea bargain, but rather noted only that "no consensus exists as to what constitutes judicial participation" before citing the familiar refrain from *Wolfe* regarding the impropriety of judicial participation in plea discussions. *Id.* at ¶ 16. However, the crucial distinction between *Zuniga* and the case at hand is that in *Zuniga* the court's suggestion came *after* Zuniga had entered his plea. The underlying rationale for the rule we adopt today is that "judicial participation in the plea bargaining . . . destroys the voluntariness of the plea." *Wolfe*, 46 Wis. 2d at 488, 175 N.W.2d at 221. A court's suggestion to modify a plea agreement *after* an agreement has been reached and the plea has been entered may not conduce the same dangers as judicial participation in the plea bargaining process itself, *before* a plea agreement has been reached and the defendant has made a plea. Therefore, our holding here comports with our conclusion in *Zuniga* that under those specific circumstances, "an amendment to the plea agreement suggested by the trial court [does not] rais[e] a question of fundamental fairness" regarding the voluntariness of the plea. *Zuniga*, 257 Wis. 2d 625, ¶ 16, citing *Wolfe*, 46 Wis. 2d

245

at 488, 175 N.W.2d at 221. We therefore reject the State's argument that *Zuniga* bars our decision in this case. Accordingly, because Williams pled guilty after the trial judge participated in the plea negotiations, he is entitled to withdraw his pleas, without having to show that actual prejudice resulted from the trial judge's participation.

**Remand.**

¶ 20. The State requests that if we allow Williams to withdraw his pleas, a different judge be assigned to the case on remand. The State cites *United States v. Barrett*, 982 F.2d 193 (6th Cir. 1992) and *United States v. Adams*, 634 F.2d 830 (5th Cir. 1981), for the proposition that reassignment of the case to a different judge "cures improper judicial participation in the plea bargaining process." We agree. The rule we adopt today is concerned both with protecting judicial neutrality and with eliminating the coercive effect of judicial participation in plea bargaining. Therefore, "[e]ven if the [judge] can put aside knowledge about the defendant and provide a fair hearing, the judge cannot remove the doubt from the defendant's mind caused by his statements in this case." *Barrett*, 982 F.2d at 196. Accordingly, we order that the case be assigned to a different judge on remand.

¶ 21. As a final matter, we address the effect of Williams's plea withdrawal on further proceedings in the circuit court. It is well-settled that "repudiation of a portion of the plea agreement constitutes a repudiation of the entire plea agreement." *State v. Lange*, 2003 WI App 2, ¶ 32, 259 Wis. 2d 774, 656 N.W.2d 480; *State v. Briggs*, 218 Wis. 2d 61, 72–73, 579 N.W.2d 783, 788 (Ct. App. 1998). The remedy for such repudiation is the

reinstatement of the original charges against the accused, restoring the parties to their positions prior to the negotiated agreement. *Lange*, 656 N.W.2d 480, ¶ 32; *Briggs*, 218 Wis. 2d at 73–74, 579 N.W.2d at 789. Here, consistent with the plea agreement, the State amended the information to reduce the original count of possession of 57.4 grams of cocaine to 15–40 grams of cocaine and dismissed the delivery of cocaine charge. In exchange, Williams pled guilty to possession of THC with intent to deliver and possession of cocaine with intent to deliver. Because Williams has been successful in his motion to withdraw his pleas, he has repudiated the plea agreement. Therefore, we vacate it and direct the circuit court to reinstate all of the original charges against Williams.

## CONCLUSION

¶ 22; We conclude that judicial participation in the plea bargaining process that precedes a defendant's plea raises a conclusive presumption that the plea was involuntary. Therefore, we adopt a bright-line rule barring any form of judicial participation in plea negotiations before an agreement has been reached. Because the trial judge participated in the negotiations that led up to Williams's pleas, Williams is entitled to withdraw his pleas. Accordingly, we reverse the order denying relief; we vacate the judgment of conviction for both offenses; and we remand for further proceedings on all the charges originally filed against Williams. On remand, we order that the case be assigned to a different judge.

*By the Court.*—Judgment and order reversed.