STATE of Wisconsin, Plaintiff-Respondent,

v.

Antoine T. HUNTER, Defendant-Appellant.

Court of Appeals

*No. 03–2348–CR. Submitted on briefs March 18, 2004.—
Decided December 30, 2004.*

2005 WI App 5

(Also reported in 692 N.W.2d 256.)

On behalf of the defendant-appellant, the cause was submitted on the brief of *James R. Lucius*, Greenfield.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Alan Lee*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Deininger, P.J., Dykman and Lundsten, JJ.

¶ 1. DEININGER, P.J. Antoine Hunter appeals a judgment of conviction for possession of cocaine with intent to deliver. He also appeals an order that denied his postconviction motion to withdraw his no contest plea. Hunter claims that the trial court made comments following a suppression hearing that constituted judicial involvement in plea negotiations, thereby rendering his subsequent no contest plea involuntary per se under our holding in *State v. Williams*, 2003 WI App 116, 265 Wis. 2d 229, 666 N.W.2d 58. Because the comments at issue did not amount to "judicial participation in plea negotiations" within the meaning of *Williams, id.*, ¶ 2, and because Hunter does not argue on appeal that the comments actually coerced him into tendering a plea, we conclude that Hunter is not entitled to withdraw his no contest plea. Consequently, we affirm the appealed judgment and order.

## BACKGROUND

¶ 2. The State charged Hunter with one count of possession with intent to deliver a quantity of cocaine. Hunter appeared before the trial court on October 25, 2000, for a hearing on his motion to suppress evidence. The trial court denied Hunter's motion and, noting that "[t]his was identified as a dispositive motion," asked the parties if the case should be set "for projected guilty plea." Hunter's attorney informed the court that the case should instead be scheduled for a final pretrial and trial. The trial court responded as follows:

> THE COURT: It is unlikely in this case that you're going to be acquitted given the amount of drugs that were seized and where they were seized from and the statements that you have given. You may hold out hope for that, but I want to just be clear and plain with you. This is a case where you are likely to be convicted. If you want to exercise the opportunity to get some credit and in other words to catch a break, then there is a time for coming forward and admitting your guilt.
>
> If you would rather fight this and have a jury find you guilty you will be convicted and you will be sentenced, but you won't get the credit that you would otherwise get by coming forward. Now, I don't say these things to tell you that you don't have a right to a trial. You have a right to sit there as you have today. I will tell you this. You would best be well-behaved during trial because I'm not going to subject a jury to what you have subjected me to today.
>
> [HUNTER]: May I say something?
>
> THE COURT: No you may not. I want you to consider carefully what your odds are at trial and consider carefully whether it's in your best interest to try this case given the weighty evidence against you. Let's go off the record and set a date for final pretrial and trial.

¶ 3. After several more court appearances that we describe later in this opinion, Hunter tendered a no contest plea on May 2, 2001, to the single charge against him. The trial court accepted the plea and subsequently sentenced him to sixty-six months of imprisonment, with a thirty-month term of initial confinement and thirty-six months of extended supervision, which was consistent with the State's recommendation as set forth in the parties' plea agreement.

¶ 4. Hunter moved postconviction to withdraw his plea, contending that the trial court had improperly influenced him to plead no contest. In an affidavit supporting his motion, Hunter averred that the court's comments at the October 25, 2000, motion hearing had caused him to plead no contest in May of 2001. The trial court denied the motion without a hearing, concluding that *Williams* did not apply and that Hunter had failed to make a sufficient showing that his plea had been coerced. Hunter appeals the judgment of conviction and the denial of his postconviction plea withdrawal motion.[1]

---

[1] Hunter's postconviction motion recites that he sought relief "pursuant to [Wis. Stat. §] 974.06(1)." This would be consistent with one of the arguments Hunter makes on appeal, which is that a previous postconviction counsel had rendered ineffective assistance, resulting in "the loss of [his] right to a direct appeal of his conviction." We note, however, that the present appeal has been treated as a direct appeal under Wis. Stat. § 974.02 (2001–02) and Wis. Stat. Rule 809.30. We previously extended the deadline for and accepted Hunter's otherwise untimely Notice of Intent to Pursue Postconviction Relief. The State Public Defender appointed Hunter's present counsel, who represented Hunter in filing both his plea withdrawal motion and this appeal. Notwithstanding the fact that Hunter's postconviction motion to withdraw his plea was filed well after the Rule 809.30 deadline for doing so, he has suffered no

## ANALYSIS

¶ 5. A defendant who seeks to withdraw a plea after sentencing has the burden of showing by "clear and convincing evidence" that a "manifest injustice" would result if the withdrawal were not permitted. *State v. Truman,* 187 Wis. 2d 622, 625, 523 N.W.2d 177 (Ct. App. 1994) (citation omitted). To meet this standard, a defendant must show "serious questions affecting the fundamental integrity of the plea." *Libke v. State,* 60 Wis. 2d 121, 128, 208 N.W.2d 331 (1973). A plea of guilty or no contest that is not shown by the record to have been voluntarily entered does not comply with constitutional requirements for a valid plea. *See State v. Bangert,* 131 Wis. 2d 246, 257, 389 N.W.2d 12 (1986) (citing *Boykin v. Alabama,* 395 U.S. 238 (1969)).

¶ 6. Although it is often said that whether to grant a post-sentence plea withdrawal motion is committed to the sound discretion of the trial court, when a defendant establishes a constitutional violation, the withdrawal of his or her plea becomes a matter of right and the trial court has "no discretion in the matter" to

prejudice on that account. Hunter is represented in the appeal by appointed counsel and he has obtained in both the trial court and this court full consideration of the issue he wishes to raise. We hereby ratify any heretofore implicit extensions of deadlines under RULE 809.30 for filing and deciding a motion for postconviction relief and for commencing this appeal. *See* WIS. STAT. RULE 809.82(2)(a) (providing that this court may, "upon its own motion," except in certain circumstances not present here, "enlarge . . . the time prescribed by these rules . . . for doing any act, or waive or permit an act to be done after the expiration of the prescribed time."). All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

deny the motion. *Bangert*, 131 Wis. 2d at 283. Whether a plea was voluntarily entered is a question of constitutional fact. *Id.* We affirm the trial court's findings of evidentiary or historical facts unless they are clearly erroneous, but we independently determine whether the established facts constitute a constitutional violation that entitles a defendant to withdraw his or her plea. *Id.* at 283–84; *State v. Sturgeon*, 231 Wis. 2d 487, 496, 605 N.W.2d 589 (Ct. App. 1999).

¶ 7. We have recently recognized a "bright-line" rule that bars "any form of judicial participation in plea negotiations before a plea agreement has been reached." *Williams*, 265 Wis. 2d 229, ¶ 1. A plea entered following a judge's participation in plea negotiations is "conclusively presumed" to be entered involuntarily. *Id.*, ¶ 16. Hunter, relying on the *Williams* bright-line rule, argues that the trial court's comments at the October 25, 2000 motion hearing constituted judicial participation in the plea negotiation process. He claims that, because the trial court participated in plea negotiations, he is entitled to automatic plea withdrawal regardless of whether his plea was actually coerced. We disagree and conclude instead, as did the trial court, that the record does not support Hunter's claim that the trial court "participated in plea negotiations" within the meaning of *Williams*. Accordingly, there is no "conclusive presumption" that Hunter's plea was involuntarily entered.

¶ 8. Hunter would have us interpret our statement in *Williams* that "*any form* of judicial participation in plea negotiations," *id.*, ¶ 1 (emphasis added), mandates the automatic withdrawal upon request of a plea tendered after a judge has made comments like those quoted above. We decline to expand the *Williams*

426

rule to encompass all comments a judge might make regarding the strength of the State's case or the advisability of a defendant giving consideration to a disposition short of trial. To do so would undermine the effectiveness of the rule because the line whose crossing triggers a conclusive presumption that a plea was involuntary would be far less bright. Trial court judges would not know when the line had been crossed or how to avoid crossing it short of avoiding any discussion with a defendant whatsoever regarding the likely future course of the criminal proceedings.

¶ 9. In order to discharge a trial court's case-management responsibilities and prevent the needless clogging of trial calendars with cases that will almost certainly not be tried, a trial court needs to know as early as reasonably possible whether a case appears headed for trial or a plea. The court must therefore be free to inquire of the parties whether they have discussed a resolution or intend to do so, without fear that their comments or inquiries will later be deemed to have constituted "judicial participation in plea negotiations." We share the dissent's concern regarding the inappropriateness of the trial court's comments in this case. (See ¶ 13.) We conclude, however, that the *Williams* rule does not require automatic plea withdrawal whenever a court expresses its view of the strength of the State's case or advises a defendant to consider the advisability of pursuing a disposition short of trial. Instead, when a court's comments to a defendant are arguably coercive of a plea, it remains the defendant's burden to show that the plea that followed was involuntary.

¶ 10. We turn to the facts in *Williams* to determine what conduct on the part of a trial judge is

427

prohibited as constituting "participation in plea negotiations." On the morning scheduled for trial, the trial judge in *Williams* invited the defendant, his attorney and the district attorney into chambers to discuss the case. *Id.*, ¶ 3. Following this conference, the parties returned to the courtroom, where the trial court stated on the record that an agreement had been reached in chambers with the "assistance or urging" of the court. *Id.* During the ensuing plea colloquy the trial court made a record of the discussion in chambers, which revealed that the court had discussed possible dispositions and sentence ranges. *See id.*, ¶¶ 4–5. Specifically, the trial court in *Williams* told the defendant in chambers that he faced "eight to ten as possibly years in prison" if he went to trial and lost, and "there was a discussion of a range from one to three as a possibility" if there was a plea. *Id.*, ¶ 5.

¶ 11. By contrast, there is no suggestion in the present record that the trial court was a party or even privy to any plea negotiations between the State and Hunter until the parties announced to the court on April 30, 2001, that they had reached a plea agreement. Hunter points to only the trial court's on-record evaluation of the State's evidence following the suppression hearing on October 25, 2000, and its suggestion to Hunter to "consider carefully" his chances of success at trial given the strength of that evidence, as proof of the court's "participation" in plea negotiations. Unlike in *Williams*, the trial court in this case did not convene an impromptu settlement conference, and it did not make or solicit specific offers of potential sentence ranges. There is nothing in the present record to suggest that the trial court gave the parties any input whatsoever regarding what it considered an appropriate disposition of the charge Hunter was facing. In short, at no time on

October 25, 2000, or thereafter, did the trial court suggest or advocate for a particular plea agreement.

¶ 12. Our holding in *Williams* expressly applies only to direct judicial participation "in the plea bargaining process itself," *id.*, ¶ 16, and there is no suggestion in our analysis that the conclusive presumption of involuntariness should extend to any and all comments from the bench that might later be characterized as having prompted a defendant to enter into a plea agreement with the State. We conclude that commenting on the strength of the State's case and urging a defendant to carefully consider his chances of prevailing at trial are many steps removed from the direct judicial participation in plea negotiations that occurred in *Williams*. We thus decline to blur the *Williams* bright-line rule by extending it to apply to the present facts.

¶ 13. Although we conclude that the trial court in this case did not "participate in plea negotiations," trial courts should be cautious in their comments regarding whether they believe a given case should be tried or resolved by a plea. Although a certain amount of judicial persuasion is sometimes welcomed by parties to a civil action when it assists them in achieving a satisfactory resolution of their dispute short of trial, the constitutional requirement that a defendant's plea of guilty or no contest be voluntary dictates that there is no similar role for the court to play in a criminal case. We noted in *Williams* that a criminal court judge's role is to serve as a " 'neutral arbiter of the criminal prosecution.' " *Id.*, ¶ 16 (citing *United States v. Bruce*, 976 F.2d 552, 557 (9th Cir. 1992)). Comments on the strength of a party's case, or suggestions that a defendant should strongly consider entering a plea, are

429

inconsistent with that role, and, as in this case, may lead to postconviction claims of judicial coercion of a plea.

¶ 14. The trial court concluded that, not only did its October 25, 2000, comments not constitute judicial participation in plea bargaining, but they also did not actually coerce Hunter into pleading no contest. We agree. Much happened between the time of those comments and the time Hunter entered his plea. Thus, it is not surprising that Hunter relies solely on the *Williams* bright-line rule in this appeal. That is, on appeal, Hunter does *not* claim the trial court erred in determining that he, in fact, voluntarily entered his no contest plea on May 2, 2001. Although Hunter does not make the claim on appeal, because we are concerned about the nature of the trial court's comments on October 25, we explain why we are confident that when Hunter entered his plea six months later, he did so voluntarily. Had Hunter pled no contest on October 25, 2000, immediately after the comments at issue, we might well conclude that Hunter's decision to forgo a trial was not entirely one of his own making. But that is not what happened.

¶ 15. At a status conference on November 9, 2000, Hunter's previous attorney had withdrawn and a new attorney assumed his representation. During a January 3, 2001, court appearance that had been scheduled "for a projected guilty plea," Hunter's new counsel requested additional time to review whether the suppression motion should be renewed or a recusal request filed. The court set deadlines for these things to occur and advised counsel that "[i]f in the course of studying these matters you determine there is a need for a trial in this case, then we will use the next hearing date to schedule

a trial." The trial court subsequently, at defense counsel's request, ordered that Hunter undergo a competency evaluation.

¶ 16. The court received the competency evaluation on March 29, 2001, and determined that Hunter was competent to proceed. His second counsel then asked to withdraw, citing extensive communication problems between her and Hunter. Knowing that the State Public Defender would not appoint a third attorney for Hunter, the court explored whether Hunter wished to and would be able to represent himself at a trial. The court then inquired of counsel whether she would be willing to call at trial the witnesses identified by Hunter, noting that if "Mr. Hunter wants a trial, then we got to have a trial, regardless of the consequences to him if he's found guilty." The court ultimately concluded that the difficulties between Hunter and his counsel were not insurmountable and denied the request to withdraw. The proceeding concluded with the following exchange:

THE COURT: Anything else, Mr. Hunter?

[HUNTER]: I wasn't staying at that house.

THE COURT: Mr. Hunter, that's a fact that a jury needs to decide. I can't decide that issue, Mr. Hunter. Mr. Hunter, look at me. Mr. Hunter, that's why we have juries. They decide those factual disputes. No matter how compelling I think your story might be, even if I believed you, I couldn't dismiss this case. The state has the right to take it in front of a jury and prove its case. So it's going to be up to a jury to decide whether they believe these people or not.

One of the things that I'm sure you and [defense counsel] have been discussing, I don't know what you've said, but one of the things I'm sure you've been discuss-

431

ing is how believable is the story that you want the jury to believe. And if it's believable, they'll believe it. And if it's not, they won't. So—

[HUNTER]: I know everybody wants me to just take a plea so this will get resolved.

THE COURT: I just said I'm happy to give you a trial.

[DEFENSE COUNSEL]: You'll get a trial.

THE COURT: Sounds like that's where we're headed. Accordingly, in this case . . . we'll set a date for trial.

¶ 17. At a "final pretrial" on April 30, 2001, Hunter's counsel informed the court that a plea agreement had been reached with the State. The trial court accordingly vacated the scheduled trial date and set the matter for a "projected guilty plea" on May 2, 2001. On that date, Hunter tendered a plea of no contest to the single charge against him. The trial court engaged Hunter in an extensive colloquy, inquiring whether he understood, among other things: that he was giving up his "right to have a jury decide whether you committed this crime"; "that all members of the jury would have to agree before you could be found guilty"; "that you give up your right to force the state to come to court with evidence of your crime and prove it beyond a reasonable doubt"; and that he was forgoing all opportunities to cross-examine "those who have accused you" and "to testify . . . at trial and tell your side of the story if you wish." On each occasion, Hunter replied that he understood. Finally, the court inquired as follows:

THE COURT: Are you making your decision to plead no contest voluntarily?

[HUNTER]: Yes.

THE COURT: Took a deep breath before you said that.

[HUNTER]: Yes.

THE COURT: You're certain this is what you want to do today. Correct?

[HUNTER]: Yes.

¶ 18. Thus, over six months elapsed between the court's October 25th comments and Hunter's plea, during which time the record indicates Hunter considered his options and discussed them with his attorney. During this time, as well, the question whether Hunter was going to plead or go to trial came up during several court appearances, and when it did, the trial court explained to Hunter that the decision was his and that he had the right to go to trial. It is also clear from the record that Williams did not decide to forgo a trial and plead no contest until some time in late April 2001, at a point when his case had been scheduled for trial. These events and the passage of time between the court's comments on October 25, 2000, and the plea agreement persuade us that the court's comments did not coerce Hunter's plea on May 2, 2001.

¶ 19. We are particularly persuaded by the exchange that took place between the court and Hunter on March 29, 2001. The court explained to Hunter on that date in no uncertain terms that his fate would be decided by jurors who would either believe his version of events or the State's, and that the court's impressions regarding the State's evidence were irrelevant to the outcome at trial. The court's and defense counsel's assurance thereafter that Hunter would have his trial, and the court's comment that the case was headed to trial and its scheduling thereof, satisfy us that Hunter knew he had the option to go to trial, and that the choice whether to do so was his. Finally, we observe that the trial court engaged Hunter in a thorough plea

colloquy before accepting his plea. In particular, we are impressed by the court's restatement of its question regarding the voluntariness of Hunter's plea after the court sensed hesitation on Hunter's part.

## CONCLUSION

¶ 20. For the reasons discussed above, we affirm the appealed judgment of conviction and the postconviction order denying Hunter's request to withdraw his plea.

*By the Court.*—Judgment and order affirmed.

¶ 21. DYKMAN, J. (*dissenting*). In *State v. Williams*, 2003 WI App 116, ¶ 1, 265 Wis. 2d 229, 666 N.W.2d 58, we adopted a rule regarding judicial involvement in plea bargaining which we believed would definitively settle this issue once and for all. We said:

> We conclude that judicial participation in the bargaining process that precedes a defendant's plea raises a conclusive presumption that the plea was involuntary. Therefore, we adopt a bright-line rule barring any form of judicial participation in plea negotiations before a plea agreement has been reached.

Not two years later, the majority has changed this "bright-line rule" to a gray area rule which applies only if the exact facts in *Williams* are repeated.

¶ 22. The purpose of our bright-line rule in *Williams* was to make after-the-fact inquiries and prejudice determinations unnecessary. We did not write *Williams* for only the facts of that case. Our whole opinion was an attempt to lay out a rule for future cases that would be easy to understand and follow. We quoted *State v. Wolfe*, 46 Wis. 2d 478, 488, 175 N.W.2d 216 (1970), for the reasons why judicial involvement in plea bargaining was inadvisable:

434

(1) [T]he defendant can receive the impression from the trial judge's participation in the plea discussions that he would not receive a fair trial if he went to trial before the same judge; (2) if the judge takes part in the preplea discussions he may destroy his objectivity when it comes to determining the voluntariness of the plea when it is offered; (3) judicial participation to the extent of promising a certain sentence is inconsistent with the theory behind the use of the presentence investigation report and (4) the defendant may feel that the risk of not going along with the disposition which is apparently desired by the judge is so great that he will be induced to plead guilty even if innocent.

*Id.*

¶ 23. The majority focuses only on the voluntariness rationale for avoiding judicial involvement in plea bargaining. *Wolfe* shows that there is more to it than that. The *Williams* bright-line rule was our attempt to make judicial inquiry and analysis by the trial court unnecessary. We recognized the problems inherent in a trial court examining what it said at a previous hearing to see whether its statements did, in fact, coerce a defendant into a plea. The problem, of course, is that Wisconsin trial judges strive to do the right thing, and usually do. But asking a trial judge whether his or her comments coerced a defendant into a guilty plea is unrealistic. Trial judges do not attempt to coerce guilty pleas knowing that they are participating in the forbidden plea negotiation process. The problem arises when trying to determine where in a broad gray area the line is located.

¶ 24. The issue of voluntariness permeated the hearings in this case. On October 25, 2000, Hunter's attorney told the court that he was unsure whether Hunter was willing to plead guilty. The trial court made it clear to Hunter that if he refused to plead guilty and

demanded a trial, he would be convicted and sentenced more harshly than he would have been had he pled guilty. After hearing this, Hunter asked: "May I say something?" The court replied: "No, you may not."

¶ 25. There is no question that the trial court's comments affected Hunter. At a January 3, 2001 hearing, his attorney told the court:

> [M]y client has raised some concerns in regards to a motion hearing that was held before this court back on October 25th of last year . . . . [H]e is also at this time wanting me to ask the court to recuse itself in regards to further handling of his case. He stated to me that comments that were made by the court during the motion hearing, and again, I'm not here to talk about the truthfulness of what he's telling me, but he does not feel comfortable proceeding in front of this court, whether it be with a trial or a guilty plea.

¶ 26. After the trial court explained to Hunter that it would not dismiss his case even though Hunter maintained that he was not present at the scene of the crime, Hunter said: "I know everybody wants me to just take a plea so this will get resolved." The court replied: "I just said that I'm happy to give you a trial." When, on April 30, 2001, Hunter changed his plea to no contest, the court asked: "Are you making your decision to plead no contest voluntarily?" Hunter replied, "Yes." The court noted: "Took a deep breath before you said that." Hunter said: "Yes."

¶ 27. The majority's conclusion that the passage of time rendered Hunter's plea voluntary is curious. Despite the passage of six months, Hunter was still reluctant to plead no contest. His attorney explained that the reason for this was Hunter's concern with the trial judge's comments at the October 25 hearing. The majority explains this as time Hunter used to decide

436

that a plea was the best course of action. Given the record, that makes no sense to me. I view the situation as Hunter finally deciding to enter a plea because he realized that if he did not, the judge had told him he would be punished more severely. Coercion does not evaporate just because time has passed. The record here shows that the judge's comments stayed with Hunter from the time they were made until the time he pled no contest.

¶ 28. Coercion is not the only reason why judicial participation in plea bargaining is inadvisable. In a criminal case, "a defendant is entitled to not only a fair trial, but the appearance of a fair trial . . . ." *Flowers v. State*, 43 Wis. 2d 352, 362, 168 N.W.2d 843 (1969). After telling Hunter that if he did not plead guilty, his sentence would be more lengthy, the judge explained: "It is unlikely in this case that you're going to be acquitted . . . ." While lawyers and judges would view this as a realistic assessment of a case, a defendant is in a different position. To a defendant, a judge, the person most responsible for his or her fate, has just explained that even before the case is heard, the verdict will be guilty.

¶ 29. The majority does not discuss institutional problems arising after a judge tells a defendant that his or her jury is going to return a verdict of guilty. Perhaps a convicted defendant's belief as to how the judge arranged for that (erroneous as that belief is) is of little import. But we should strive for a criminal justice system that is viewed as fair and impartial by as many as possible. A judge's expressed pre-trial predictions of a guilty verdict are not helpful to that view.

¶ 30. What the majority has really done is to overrule *Williams* in all but the case that reoccurs but once in ten years. The bright-line rule has been re-

placed by a gray-area rule that encourages coercion and will only lead to more appeals. The majority fears an avalanche of cases in which a judge's question whether the parties have discussed settlement results in plea withdrawal. Those fears are unfounded. A question, unless deliberately worded to be a comment, is merely that. Trial courts must be able to control their calendars. That is often done by judicial staff asking attorneys whether a case is going to trial. This, without more, cannot be coercive. Even a judge's on-the-record questions about scheduling are not coercive if all the court needs to know is whether the case is going to trial, the anticipated length of trial and whether the case will be terminated by a plea. I have every confidence that had *Williams* remained the rule, Wisconsin's judges would easily be able to avoid the problems the majority posits.

¶ 31. I joined *Williams* because I concluded that a bright-line rule would soon become as easily understood as anything can be in the practice of criminal law. For me, it is still the best way to handle a subset of the issue of allegedly involuntary guilty pleas. The majority believes otherwise, and I therefore cannot join its opinion. I would reverse, with instructions to grant Hunter's motion to withdraw his plea. Accordingly, I respectfully dissent.