State of Wisconsin, Plaintiff-Respondent,
v.
Kenneth P. Sarauer, Defendant-Appellant.
No. 03-0329-CR.
Court of Appeals of Wisconsin.
Opinion filed: July 29, 2004.
Before Dykman, Lundsten and Higginbotham, JJ.
¶1 PER CURIAM.
Kenneth Sarauer appeals from a jury verdict finding him guilty of substantial battery in violation of WIS. STAT. § 940.19(3).[1] He contends that the State infringed his constitutional right to remain silent, and that it engaged in prosecutorial misconduct and discovery violations. He asserts that the trial court improperly denied his motion for a judicial substitution; that it improperly denied his request to admit into evidence certain photographs he had taken unless he agreed to testify; that it erred in curtailing his cross-examination of Joseph Endres at trial; and that it improperly presented several admitted exhibits of evidence to the jury for deliberations. He further claims that the evidence presented by the State was insufficient to support the jury verdict. Lastly, Sarauer contends that the trial court violated his right to self-representation by requiring that he hire an attorney to represent him at his sentencing hearing.[2]
¶2 We conclude that the trial court erred in requiring Sarauer to retain an attorney for the sentencing hearing. We also conclude that he waived his right to complain about errors to which he did not object at trial. We further conclude that the trial court properly denied Sarauer's motion for judicial substitution, that it properly limited his cross-examination of Endres, and that the evidence was sufficient to support the jury verdict. We therefore affirm in part and reverse in part.

BACKGROUND
¶3 Sarauer did not testify at trial. Joseph Endres testified to the following: On November 18, 2000, Endres was hunting on land directly adjacent to Sarauer's land. He shot at a deer, wounded the animal, and proceeded to track it. The blood trail led onto Sarauer's land. Endres stopped at the property line and called to Sarauer, who was walking nearby and carrying a shotgun, to request permission to follow the deer onto his land. Sarauer did not respond and Endres continued to follow the deer, believing that he was complying with Department of Natural Resources guidelines to make every effort to find a wounded animal.
¶4 Endres walked about twenty-five feet onto Sarauer's land and was startled by a gun shot near him. Sarauer approached Endres and stated that he was going to press charges against Endres for trespassing. Sarauer demanded Endres's gun, which Endres refused to give to him. Sarauer struck Endres across the left side of his face with the stock of his gun. Endres temporarily lost consciousness and awoke bleeding. He suffered a bruised and swollen eye, a fractured tooth, and a broken partial denture plate.
¶5 Sarauer then helped Endres to find the deer and to drag it out of the woods to Endres's van. Endres registered the deer. On November 21, he saw a dentist to repair his dental injuries. The following weekend, he returned to his hunting stand to discover that several bales of hay, a seat, and some food were missing. He left the area and reported the November 18 incident to the police on November 27.
¶6 The record reflects the following undisputed facts: On December 7, Deputy Bjerkos, the investigating officer in Endres's complaint, went to Sarauer's house to ask him about the incident. Sarauer said he did not want to talk about it. A deputy served him with a summons. Sarauer, appearing pro se, pled not guilty to a charge of substantial battery. See WIS. STAT. 940.19(3). A jury found him guilty. The trial court required that he be represented by an attorney at sentencing. Sarauer said that he would retain counsel of his choice and was represented at sentencing. The trial court sentenced Sarauer to two years of initial confinement followed by three years of extended supervision and ordered him to pay restitution to the victim.

DISCUSSION 
¶7 Sarauer contends the trial court violated his constitutional right to represent himself by requiring that he retain an attorney at the sentencing hearing. The trial court, in requiring this, explained that it questioned whether Sarauer was competent to represent himself at sentencing.
¶8 The Sixth Amendment to the United States Constitution and article I, section 7 of the Wisconsin Constitution provide that an accused person has a right to represent himself or herself. The right to represent oneself is not, however, absolute. A trial court must determine that a defendant is doing so knowingly, intelligently, voluntarily, and competently. State v. Klessig, 211 Wis. 2d 194, 203, 564 N.W.2d 720 (1997).
¶9 No Wisconsin court has addressed whether there is a right to selfrepresentation at sentencing. The United States Supreme Court has said that the Constitution does not require a defendant to be represented by counsel. Faretta v. California, 422 U.S. 806, 814-15 (1975). "At the trial level, `[t]o force a lawyer on a defendant can only lead him to believe that the law contrives against him.'" Martinez v. Court of Appeals, 528 U.S. 152, 160 (2000) (quoting Faretta, 422 U.S. at 834. However, when a defendant appeals, he or she may be required to retain counsel, Martinez, 528 U.S. at 160, because the criminal appeal is a "creature of statute," not of the Constitution. Id. Sentencing is, though, a critical stage of a trial, protected within the scope of the Sixth Amendment. State v. Strickland, 27 Wis. 2d 623, 635, 135 N.W.2d 295 (1965).
¶10 Several federal courts have addressed this issue and have determined that a defendant has a right to proceed pro se at sentencing. See Lopez v. Thompson, 202 F.3d 1110 (9th Cir. 2000); United States v. Marks, 38 F. 3d 1009, 1015 (8th Cir. 1994) ("For a state to force defendant [at the sentencing stage] to accept an appointed counsel would be a violation of his constitutional rights.").
¶11 A trial court requiring a defendant to retain counsel would first have to determine that a pro se defendant was no longer competent to proceed pro se. State v. Klessig, 211 Wis. 2d 194, 203, 564 N.W.2d 716 (1997). The trial court did not do this, though it questioned his competency. Without this determination, the trial court erred in requiring Sarauer to retain counsel to represent him at sentencing, because he had a constitutional right to represent himself. We therefore reverse on this issue and remand to the trial court for resentencing at which Sarauer shall be entitled to represent himself.
¶12 Sarauer next asserts that the prosecution violated his right to remain silent. During the trial, the district attorney referred to this silence several times, indicating that it showed consciousness of guilt. Sarauer contends this infringed upon his constitutional right to a fair trial and his right to remain silent, and thus constitutes prosecutorial misconduct.
¶13 The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend V. This is also the essence of article I, section 8 of the Wisconsin Constitution. A defendant in criminal proceedings has not only the right to remain silent, but also has the right not to have his silence be used against him at trial. State v. Brecht, 143 Wis. 2d 297, 310, 421 N.W.2d 96 (1988). Still, we need not review whether the court erred by permitting the state to comment on Sarauer's silence because Sarauer did not object at trial. "Alleged errors not objected to at the trial court level are deemed waived." State v. Fawcett, 145 Wis. 2d 244, 256, 426 N.W.2d 91 (Ct. App. 1988). Sarauer could have objected to the State's references to his silence at trial, but he did not.
¶14 Sarauer contends the State engaged in prosecutorial misconduct in the form of discovery violations "out of malicious, intentional, and deliberate animosity," thereby violating his constitutional rights under the Sixth Amendment. Specifically, he argues that the State was ordered by the trial court to test for blood at the scene of the battery but that the State never performed those tests. Sarauer asserts that the results of those tests would have yielded exculpatory evidence. Sarauer specifically refers to different chemical tests that can be performed to search for blood, like applying Luminol to a scene. To remedy this breach of duty, Sarauer requests reversal of the judgment or a judgment of acquittal.
¶15 The actual order to which Sarauer refers was that "sometime after the spring thaw, when all the snow melts, [ ] Investigator Bjerkos, at his convenience and the convenience of Mr. Sarauer, go out and examine the scene where this occurred to see whether either of them can locate any evidence of blood or not." This order was not directed at the district attorney, but at Deputy Bjerkos, and it is unclear whether Bjerkos was informed of it. Sarauer cites to no authority establishing that the State must perform these scientific tests on his behalf. WISCONSIN STAT. § 971.23(1) provides that the State must disclose evidence it intends to use against a defendant at trial, not that it gather specific evidence or execute specific tests at the scene of a crime. Sarauer later moved for specific scientific testing and the trial court denied his motion. Sarauer's contention is without merit.
¶16 Sarauer argues that, because he proceeded pro se, we should disregard his failure to raise a timely objection. While we have been careful to avoid unnecessarily strict application of procedural rules in cases involving pro se litigants, granting Sarauer's request would exempt pro se litigants from basic rules of evidence. Waushara County v. Graf, 166 Wis. 2d 442, 451, 480 N.W.2d 16 (1992). We will not do so. The trial court found that Sarauer knowingly, intelligently, and voluntarily waived his right to counsel. The trial court cautioned Sarauer that "an attorney is trained in the law and might be aware of defenses or other approaches to your case that you are not aware of because you are not an attorney." The trial court later tried to persuade Sarauer to hire an attorney and said, "You do understand, though, that a lawyer might be helpful to you in this case." Sarauer ignored this advice. Because Sarauer was told of the danger and chose to accept the risks of proceeding pro se, we hold him to his waiver.
¶17 Sarauer further asserts that the State's failure to provide him with the name of one "AB," whom Sarauer claims would have testified in his favor, was prosecutorial misconduct. He claims that the trial court ordered the State to give him AB's contact information at an August 8, 2001 hearing, but that the State never complied. He argues that the failure of the State to provide him with contact information for AB constituted a violation of his constitutional rights under the Sixth Amendment, specifically his right to have compulsory process for obtaining witnesses in his favor. U.S. CONST. amend. VI.
¶18 The trial court did not order the State to give Sarauer AB's contact information. It issued no orders at the August 8, 2001 hearing. The trial court discussed AB and concluded that AB was not relevant to the case at hand, but said to the State, "apparently you're going to talk to Investigator Bjerkos, then if you have any conversation that you think he's entitled to, I'm sure you'll give it to him." It was never determined that the State knew the identity of AB. Because the State did not know the identity of AB, the State could not produce him or her.
¶19 Sarauer also contends that the State engaged in prosecutorial misconduct by not delivering Sarauer's shotgun to the courtroom to be used as evidence at trial. Part of his bail included a "no carry" order that prevented him from bringing the gun to trial himself. He argues that the trial court ordered the State to deliver the gun and that it "would have almost proven" that he did not commit the battery.
¶20 The trial court ordered that "the Assistant District Attorney will arrange for a Sheriff's Deputy to go to [Sarauer's] house and for him to bring the gun back to court and it will remain in the possession of the Sheriff's Department throughout the trial." It later modified this order, saying to Sarauer, "So you and Mr. Delgado can make those arrangements to go either sometime today or first thing tomorrow to pick this weapon up." Apparently, Sarauer did not make an effort to make these arrangements. This is not prosecutorial misconduct.
¶21 Sarauer contends that he never received a witness list from the State and, therefore, none of the State's witnesses should have been allowed to testify. The record reflects, though, that Sarauer did receive a witness list. In an "Affidavit of Defendant Kenneth Sarauer Re: District Attorney's Interfering with Discovery," filed 3-12-01, Sarauer stated: "I am the defendant in the above named case, and received a packet of investigation reports from the District Attorney's Office on March 8, 2001, including a list of witnesses." Because the record reflects that Sarauer received a witness list, Sarauer's contention is without merit.
¶22 Sarauer contends that the court improperly denied his motion for judicial substitution. He filed the motion on August 9, 2001. He argues that Judge Rosborough was not a fair and impartial judge and should have recused himself from the case because of prejudice and bias. Sarauer presents the following evidence in support of motion: (1) Sarauer tried to remove the Judge from office. (2) Sarauer criticized some of the Judge's earlier decisions. (3) The Judge remitted a previous jury award to Sarauer. (4) The Judge denied the majority of Sarauer's motions. (5) The Judge is embroiled in a personal conflict with Sarauer.
¶23 WISCONSIN STAT. § 971.20(4), provides that a defendant must file a written request for a judicial substitution before making any motions and before arraignment. Sarauer's motion came two weeks before the actual trial and well after his first motion to the trial court. His request was untimely and therefore was appropriately denied.
¶24 Furthermore, the record does not reflect any trial court bias that would require Judge Rosborough to recuse himself. A trial court is not biased because it has ruled against a defendant on a previous motion or matter. A mere appearance of partiality is not sufficient to demonstrate bias. State v. McBride, 187 Wis. 2d 409, 416, 523 N.W.2d 106 (Ct. App. 1994).
¶25 Sarauer also complains about the trial court's handling of his attempt to introduce into evidence over one hundred pictures of the crime scene. The trial court ruled that he could introduce a few photographs, but added that he would have to testify about the details of each photograph. It noted that he would also be subject to cross-examination. Sarauer contends that this violated his constitutional right to present a defense and that the photos were highly probative. U.S. CONST. amend VI.
¶26 Whether a trial court's actions violate the defendant's right to present a defense is a question of constitutional fact that requires independent appellate review. State v. Tucker, 2003 WI 12, ¶28, 259 Wis. 2d. 484, 657 N.W.2d 374. As part of a defense, a defendant may present admissible evidence. For evidence to be admissible, it must be authenticated or identified by "evidence sufficient to support a finding that the matter in question is what its proponent claims." WIS. STAT. § 909.01. Sarauer would have to testify to establish that the photos were what he claimed they were. Once a witness, he could be subjected to a full cross-examination. WIS. STAT. § 906.11(2). He also contends that the photos were exculpatory because they would show that the amount of blood present contradicted Endres's testimony. Since the amount of blood involved has no bearing on the charge against Sarauer, any prejudice resulting from the exclusion of the photos would be miniscule and any possible error would be harmless. The trial court did not err by refusing to admit the photographs unless Sarauer subjected himself to cross-examination.
¶27 Sarauer contends that the trial court erred in curtailing his crossexamination of Joseph Endres at trial. He asserts that this violated his constitutional rights under the Sixth and Fourteenth Amendments. U.S. CONST. amend VI, XIV. After several repetitive questions, the trial court limited Sarauer's questioning of Endres and told him he would have to finish within ten or fifteen minutes.
¶28 An accused has a right to be confronted with the witnesses against him or her. U.S. CONST. amend VI. This right is not absolute, though, and a trial court has a right to limit confrontation based on repetitiveness, obfuscation of the issues, harassment, and prejudice. Delaware v. Van Ardsall, 475 U.S. 673, 679 (1986). Whether limitation of cross-examination violates a defendant's right of confrontation is a question of law that we review de novo. State v. Williams, 2002 WI 58, ¶7, 253 Wis. 2d 99, 644 N.W.2d 919. Sarauer was becoming repetitive in his questioning of Endres, frequently asking questions that had already been asked and answered. He also attempted to question Endres on topics that had no relevance to the case. The trial court did not err by curtailing the crossexamination as it did.
¶29 Sarauer contends that the trial court improperly sent several pieces of evidence to the jury. Sarauer initially told the trial court that he wished all pieces of evidence to be sent to the jury for deliberations. The State proposed sending only those pieces requested by the jury. The trial court discussed each piece of evidence with the parties and determined that four pieces of evidence should be sent to the jury for deliberations: the photograph of Endres taken three days after the incident, Sarauer's hunting coat, a mock-up gun used for trial demonstration purposes, and a stained rag Endres testified that he used to stop the bleeding from his face. The trial court decided upon these items based upon its experience with juries.
¶30 If a defendant argues in support of a course of action, he or she will not be heard later to allege error or defects precipitated by such action. Farrar v. State, 52 Wis. 2d 651, 660, 191 N.W.2d 214 (1971). In such a case, the defendant is deemed to have waived any future right to complain. Id. Sarauer encouraged the trial court to submit the evidence of which he now complains. He has waived this assertion of error.
¶31 Sarauer contends that the evidence presented by the State was insufficient to support the jury verdict and that no reasonable jury could have convicted him. Specifically, he points to alleged inconsistencies in Endres's testimony, Endres's statement that he did not feel pain, and the amount of blood Endres testified that he lost.
¶32 An appellate court will reverse a jury verdict for insufficiency of the evidence only if the evidence, viewed most favorably to the State and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. State v. Poellinger, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990). This does not describe the evidence here. The amount of blood lost and the lack of pain felt by the victim are not elements of WIS. STAT. § 940.19(3). The jury, not the reviewing court, resolves conflicts in evidence and inconsistencies in testimony. State v. Daniels, 117 Wis. 2d 9, 18, 343 N.W.2d 411 (1983); Whitaker v. State, 83 Wis. 2d 368, 377, 265 N.W.2d 575 (1978). If a jury could reasonably have drawn more than one inference from the evidence, a reviewing court must accept the jury's choice. State v. Alles, 106 Wis. 2d 368, 377, 316 N.W.2d 378 (1982). The jury acted reasonably when it found Sarauer guilty.
¶33 We affirm the trial court on all issues but that of requiring Sarauer to retain counsel to represent him at sentencing. On that issue we reverse and remand for proceedings consistent with this opinion.
By the Court.  Judgment affirmed in part; reversed in part and cause remanded with directions.
NOTES
[1] WISCONSIN STAT. § 940.19(3) (2001-02) reads: "Whoever causes substantial bodily harm to another by an act done with intent to cause substantial bodily harm to that person or another is guilty of a Class D felony." Subsection 3 of WIS. STAT. § 940.19 was repealed as of February 1, 2003. All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] Sarauer also requests habeas corpus relief and immediate release from prison. He has completed his prison sentence and therefore we do not address his habeas request.